# SUPREME COURT.

THE PEOPLE, *ex rel.* ROBERT J. LIVINGSTON, appellant, agt. DOUGLAS TAYLOR, Commissioner of Jurors, respondent.

The office of the writ of *mandamus* is two-fold: *First.* When addressed to courts of inferior jurisdiction and to judicial officers, and to officers exercising judicial powers, to compel them to act and to decide on matters before them. *Second.* When addressed to ministerial officers, to do the act which they are charged with unlawfully refusing to do. It will also issue when the party has no other remedy.
The *commissioner of jurors* for the city and county of New York, is *not a judicial, but a ministerial officer,* and a *mandamus* will lie to compel him to remove from the list of jurors in his custody the name of any person not legally liable to do jury duty in said city and county.

*New York General Term, November,* 1865.

*Before* INGRAHAM, *P. J.,* LEONARD *and* BARNARD, *Justices.*

ROBERT J. LIVINGSTON, the relator, is not a resident of the city and state of New York. He resides with his family at New Brunswick, in the state of New Jersey. The commissioner of jurors put his name upon the jury list and refused to remove it upon immediate application made to him for that purpose, according to law, upon the ground of non-residence.

The relator applied for and obtained this writ, directing the defendant to strike off and remove the relator's name from the jury list. The defendant, in his return, states that he struck off the name of the relator from the jury list, but immediately restored it to the same, in pursuance of his view of his duty. The defendant thereupon moved that the writ be vacated as improvidently issued, and the relator moved that an attachment issue against the defendant as for contempt.

The judge at special term vacated the writ solely upon the ground that he had "no right to direct the commissioner to take the name of a person whom he deems liable

for duty off the list." From this order vacating the writ, the relator appeals.

LEWIS L. DELAFIELD, *counsel for relator.*

I. Proceedings in mandamus cases are to be reviewed by appeal, and not by writ of error. (*The People, &c.* agt. *Church*, 20 *N. Y. R.* 529 ; *The People, &c.* agt. *Albright*, 14 *Abb. Pr. R.* 305 ; *Laws of* 1854, *p.* 592.)

II. The order is appealable. It was based solely upon the idea that the *court has no right* to direct the commissioner to strike off the relator's name, as directed by the writ. It has been repeatedly held that when a court refuses to exercise a discretion vested in it by law, under the impression that it does not possess the power which it is called upon to exercise, and in consequence an erroneous decision is obtained, such decision will be reversed on appeal. (*Beach* agt. *Chamberlain*, 3 *Wend. R.* 366 ; *McElwain* agt. *Corning*, 12 *Abb. Pr. R.* 16 ; *McMahon* agt. *Mutual &c. Ins. Co.* 12 *Abb. Pr. R.* 28 ; *Artisans' Bank* agt. *Treadwell*, 34 *Barb. R.* 553.)

III. The only question is, has the court the power to compel the commissioner to strike a name from his list which he has erroneously placed there? Has it any control over him ; or is he, as the opinion of the judge below would indicate, the only officer known to our law, who is beyond the reach of the law? The relator presses the following views upon the court with the greatest earnestness, because if any other views should prevail, the commissioner would be clothed with arbitrary power, and could put any person of any age or sex upon his list, and there would be no adequate redress. There can be no question as to the duty of the commissioner to strike off of his list the name of an exempt at any time. It is his duty to make and " correct " the list. The statute provides that " the names of all persons found to be exempt from serving

as jurors shall be struck from the list, and the ground of exemption recorded " (3 *R. S.* 698, § 20).

IV. The commissioner of jurors is a *ministerial officer*, and in no sense a judicial officer. The court still has all the power that it ever had over jurors, but it is relieved from the routine business of attending the preparation of the jury list and summoning the jury. The commissioner in the city of New York is substituted for town officers in other parts of the state, and it cannot be claimed that they are judicial officers (3 *R. S.* 695, §§ 4, 5). That he is a ministerial officer is apparent from the provisions of the statute.

(*a*) He is appointed by the judges, just as they appoint clerks and criers (3 *R. S.* 697, §§ 15 to 19). The commissioner appears in his true character in section 34, where he is called a " clerk " of the board for the selection of grand jurors. (3 *R. S.* 701, § 34). Neither judges nor supervisors could appoint a judicial officer without violating the constitution. Judicial powers cannot be delegated (*Entick* agt. *Carrington*, 19 *Howell, State Trials,* 1063).

(*b*) The statute reads : " The *said* jurors shall be *selected* " by the commissioner (3 *R. S.* 697, § 15). The word "said" is explained by section 14, as " all persons *residing in said* city, who shall be qualified to serve as jurors." These qualifications are *fixed by law* (3 *R. S.* 695, § 5, *and* 697, § 14). All the commissioner has to do is "*to select*" certain designated persons ; he has no discretion in this (§§ 15, 20). After this selection, he must give notice that the jury list is ready for correction, and must strike from it the names of exempts (3 *R. S.* 698, § 20). He has no discretion to determine who are exempts ; that is *fixed by law.* But if *exempts* do not apply to be excused, they cannot be held for duty, and the court always discharges them when summoned. It would be ground for challenge to the array, if an unqualified person, *ex gr.*, a non-resident, were upon the jury (3 *Black. Com.* 351, 359).

(*c*) The commissioner cannot fine jurors for non-attendance; the court must do this (3 *R. S.* 698, § 21). And the court may, as it constantly does, excuse jurors from serving, without consulting the commissioner. And the court may remit the fine *for any reason that it thinks fit*, as it constantly does. The commissioner may also remit the fine; but he can only do this upon "legal excuse" fixed by law (3 *R. S.* 698, § 22). That the courts have the right to excuse from duty and to remit fines, as is their practice, is apparent; section 25, which provides that defaulting jurors must be excused by the court, unless this power is *specially* delegated to the commissioner *by order of the court ;* and from section 21, which provides that the court must ascertain whether the jurors have been duly summoned, before it can fine them.

(*d*) The conclusion of the matter is, that the commissioner, like other officers of the court, is under the direction and control of the court, and holds office to relieve it of burdensome ministerial duty, *and has no general discretion, and can only exercise certain powers clearly defined and fixed by statute ;* and that other powers of a much higher grade connected with the jury system, were never entrusted to the commissioner, and may be exercised by the court at its discretion.

(*e*) The duty of a clerk in "approving" an official bond is ministerial, and may be enforced by mandamus (*Gulick* agt. *New*, 14 *Ind. R.* 93). The register may be compelled by mandamus to satisfy a mortgage (*The People, &c.* agt. *Miner*, 37 *Barb. R.* 466). And both of these acts require an exercise of judgment and discretion, not necessary in *selecting jurors* pointed out by law.

V. But granting (for the argument only) that the commissioner is a judicial officer, it clearly appears from the statute (*see last point*) that he has no general discretion, but that his conduct is governed by fixed principles and rules, from which he cannot depart. The qualifications of jurors

are *fixed by law.* All the commissioner has to do is to *select* the designated persons. It is well established that the discretion with which courts will not interfere, is such as is *general, and not regulated by fixed principles, and that whenever the discretion is fixed by principle and law, the courts will control that discretion by mandamus.* (*The People* agt. *Superior Court,* 5 *Wend. R.* 114 ; *Id.* 10 *Wend. R.* 285 ; *Hull* agt. *Supervisors of Oneida Co.* 19 *Johns. R.* 259.) The law is thoroughly discussed in *Manor* agt. *McCall* (5 *Geo. R.* 522).

VI. The statutes relating to the commissioner nowhere provide *in terms* that he shall not be subject to the control of the supreme court. And without such express enactment, he is subject to it; " The authorities cited show that the right to review cannot be taken away without an unequivocal declaration to that effect by the legislature. They show that the superior courts in England and in this state, have disregarded the strongest intimations of the legislative will, unless they came up to this standard ; and the law may be considered as settled, that language as emphatic as that contained in this statute will not deprive a party of the right of review. In justification of this strictness, it has been alleged that administrative and judicial, or *quasi* judicial powers, are frequently delegated to men without legal experience, who may err through ignorance, or abuse their trust from interested motives. *It has, therefore, been deemed indispensable to the security of the citizen, that a superintending power should exist somewhere over inferior courts and officers, to restrain irregularities, and to correct errors of law, and above all, errors of jurisdiction.*" (*Per* Gardiner, *J. delivering the opinion of the Court of Appeals in Matter of Canal, &c. street,* 12 *N. Y. R.* 411, 412 ; see also point V. of *N. Hill, Id. p.* 407.)

VII. Any view which makes the commissioner a judicial officer, would render the act under which he claims unconstitutional and void. The judicial powers of the supreme court can only be stripped from it by constitutional enact-

People, *ex rel.* Livingston agt. Taylor.

ment. The legislature cannot transfer the judicial power of the supreme court to any other body or person (*Constitution, art.* 6, § 3).

VIII. The objection of the court below, that the court and commissioner having co-ordinate powers (admitting this only for argument), the court should not interfere by mandamus, is not insuperable. A mandamus lies to the common pleas to restore an attorney removed by it. It was admitted that the common pleas had full power to remove the attorney, but the supreme court examined the testimony, and not being satisfied that this power was properly exercised, they issued their mandamus. (*People* agt. *Justices of Delaware Co.* 1 *Johns. Cases,* 181; *People* agt. *Chenango Co. Justices, Id.* 179.)

IX. No persons can be jurors in this city by the special law for the city, but "*persons residing in said city,* who shall be qualified to serve as jurors, and not exempted by any of the laws of this state" (3 *R. S.* 697, § 14). The word "resident," has a well defined legal meaning. It appears in many of our laws, but has perhaps received most attention in its connection with the laws concerning arrests and attachment (*Code,* §§ 179, 227, 229). A resident is held to be one who has a settled, fixed abode within the state, with the intention of remaining permanently, and of exercising political duties, and of being bound by the duties flowing therefrom. (*See cases cited in Voorhies' Code,* 1864, *pp.* 364-366; 2 *Kent's Com.* 540; *note,* 8*th ed.*) And this is the meaning of the words "residing in said city," in the above act.

(*a*) The act relating to the city does not fix the qualifications of jurors, further than to insist that they must be residents, nor does it name the excepted classes. For these qualifications we must look to the common law, where all other qualifications were secondary to that of residence in the county. Originally every jury must consist of men *de vicineto,* from the hundred, and afterwards from the body

of the county ; and this is our law. If none were returned from the hundred, the array might be challenged for defect. (3 *Black. Com.* 351-361 ; *Stephen on Pleading*, 78.) An alien or non-resident could not be a juror. (3 *Black. Com.* 362 ; *Edwards' Jurymens' Guide*, 57.)

(*b*) Our statute is in this respect, only delaratory of the common law.

(*c*) There are special laws relating to the qualifications of jurors for many of the counties of this state, and in all of them the common law rule is adopted, that the juror must reside within the county. This is so in the cases of the following counties : New York county (3 *R. S.* 697, § 14) ; Kings county, where the statute declares it a ground of exemption " that such person does not himself reside in the county of Kings" (3 *R. S.* 704, § 52, *sub.* 12) ; Niagara, Erie, Chautauque, Cattaraugus, Allegany, Genesee, Orleans, Monroe, Livingston, Jefferson, Lewis, St. Lawrence, Steuben, Franklin, Oneida and Madison counties (3 *R. S.* 696, § 6).

(*d*) Among the many reasons why non-residents are excluded from serving on the petit jury is, that from the list of petit jurors the grand jurors are taken (3 *R. S.* 701, § 35). And a body so powerful and irresponsible should only be composed of residents. It is to be observed that no property qualification is required for jurors in the city of New York. In the absence of such a qualification, it is the more necessary to confine the commissioner to the selection of resident citizens for jurymen.

(*e*) Jury duty is one of the duties of a citizen to the state to which he belongs ; and that state might justly complain of the interference of another state with this duty.

X. The order setting aside the mandamus. should be vacated, and the defendant declared to be in contempt for not obeying the same.

People, *ex rel.* Livingston agt. Taylor.

WILLIAM C. TRULL, *for respondent.*

By the court, INGRAHAM, P. J. Application was made in this matter to the special term for a mandamus, commanding the respondent to strike the name of the relator from the list of jurors in 1864. The writ was granted by default, but subsequently the default was opened, and the judge decided that he had no power to issue the writ in such a case. The relator appealed.

We are not furnished with the evidence on which the relator applied to the commissioner of jurors to have his name stricken from the list of jurors, and, therefore, we cannot decide whether he was entitled thereto, and the only question before us on this appeal is, whether a mandamus will lie to the commissioner of jurors for such a purpose, if it be conceded that the relator is entitled to the relief he asks. The office of the writ is two-fold; one when addressed to courts of inferior jurisdiction and to judicial officers, and to officers exercising judicial powers, to compel them to act and to decide on matters before them; the other when addressed to ministerial officers, to do the act which they are charged with unlawfully refusing to do. The commissioner of jurors is not a judicial but a ministerial officer. It is true he has to decide on the sufficiency of the excuse offered by a juror to have his name stricken from the list of jurors, but still the nature of that excuse, and the duty of the officer, is clearly defined by the statute, and when the truth of the facts relied on is shown to him, he has no discretion to exercise, and has no right to keep the name of the juror on the list. If the statute vested any discretion in the officer, the rule is different. In the language of EMOTT, J., in *The People* agt. *The Contracting Board*, there must be a clear legal right not merely to a decision, but to the thing itself.

There is, also, another principle applicable to this writ —that it issues where the party has no other remedy.

People, *ex rel.* Livingston agt. Taylor.

There could be no other remedy to the relator but to bring a *certiorai*, and review the proceedings of the commissioner in that form of proceeding. That his acts are subject to review in one or the other mode, there can be no doubt. It never was the intent of the law to leave this officer at liberty to exercise an arbitrary control over those who are to form the list of jurors. The law has particularly enumerated those who are to be placed upon it, and he is bound to comply with those provisions. The objection to a review by *certiorari* is, that it would bring up the whole record, which he is required to keep; and where such a course would lead to great inconvenience, the courts have held that the writ of mandamus might be resorted to. This rule is stated by MITCHELL, J., in *Adriance* agt. *The Supervisors* (12 *How. Pr. R.* 326), where he says : "The general principle may be stated, that where a specific duty is imposed on public officers by statute, and they do not conform to the statute, and the omission to perform affects a particular part only, and not the whole list, a mandamus will issue." Nor is this remedy to be withheld because the relator might have an action for damages. Judge MITCHELL, in the last cited case says: "It is better for the public that the specific remedy be applied to removing the wrong directly, than to have actions for damages, in which the officer may be punished, although he erred only in judgment." So in *The People* agt. *The Mayor, &c.* (10 *Wend.* 393), it was said that where a specific duty was imposed by statute on a public officer, he may be compelled to execute it by mandamus, although an action for damages might also lie. In the case of *The People* agt. *Miner* (37 *Barb.* 466), the writ issued to the register to compel the satisfaction of a mortgage, although in that case he had to decide upon the sufficiency of the satisfaction piece ; and SELDEN, J., in *The People* agt. *The Contracting Board* (*supra*), says : "There are many questions requiring the decision of ministerial officers, which involve to some

extent, the exercise of legal discrimination in their solution, but which are not regarded as judicial questions, and consequently the decision of them is not conclusive in collateral proceedings.

My conclusion is, that the writ may issue to this officer. The list in which the relator's name is inserted has ceased to be of any importance, as the period of time for which it was to be in force has expired. There is no propriety, therefore, now in issuing the mandamus, and nothing can be done except to reverse the order of the special term as to the power of issuing this writ in this case.

Order reversed.

———◆◆———

## SUPREME COURT.

THE PEOPLE, *ex rel.* DE LANCEY KENNEDY, appellants agt. THE MANHATTAN GAS LIGHT COMPANY, respondents.

This court have authority to direct, by *mandamus*, a *gas company* to furnish gas to persons who under provisions of their charter, have a right to receive it, and who offer to comply with the general conditions on which the company supply others.

Section 6 of the charter of the *Manhattan Gas Light Company* in the city of New York, provides that " on the application in writing of the owner or occupant of any building or premises within one hundred feet of any main laid down by such company, and payment by him of all money due from him to the company, the company shall supply gas," &c. Where a person complies with this provision, by making his application in writing, &c., upon which the company furnish him gas for several months, when they refuse to furnish gas further on account of a former indebtedness due from such person to the company under a former contract, the company cannot be compelled to continue to furnish gas to such person, on the ground that they had waived their right to insist upon payment of the former indebtedness by not demanding it when the application was made.

*New York General Term, November*, 1865.

*Before* INGRAHAM, *P. J.*, LEONARD *and* BARNARD, *Justices.*

THIS was an application for a mandamus requiring the defendants to supply the relator with gas at his house No. 121 West Sixteenth street, New York, which was denied

by Judge BARNARD, and the relator appeals. The relator had been supplied with gas under the contract set forth in the moving papers, the company having accepted ten dollars deposit, and supplied him with gas for nine months. The company then discovered an indebtedness of four years standing due to them by the relator, took away his meter, and declined to supply him with gas until the debt in arrears was paid. No non-payments exist under the last contract.

TIMOTHY CRONIN, *for appellant.*

I. The appeal involves the construction of section 6, of the act of April 14, 1859, which is as follows : " On the application in writing of the owner or occupant of any building or premises within one hundred feet of any main laid down by any such company, and payment by him of all money due from him to the company, the company shall supply gas." The construction to be given to this section cannot be of any doubt. It is explicit. *At the time of the application in writing*, they may insist upon the payment of arrears due from an applicant. If they fail to insist upon payment of arrears *then*, and accept the deposit and furnish gas, they waive this provision of the statute made for their benefit. (*Penniman* agt. *Elliott*, 27 *Barb.* 315 ; *Buel* agt. *Trustees of Lockport*, 3 *Com.* 197 ; *Williams* agt. *Potter*, 2 *Barb.* 316.) That no right existed to refuse to supply, is clear from the ninth section of the act of 1840. There the grounds of refusal to supply are set forth. None of them existed in this case, and were not claimed to be, at the time of defendants' refusal.

II. The liability of the defendants to be proceeded against is clear. Now the question is, by what remedy ? Upon principle, the defendants, a corporation, having accepted the relator's money, and executed a special contract, should be compelled to discharge its corporate func-

tions, and specifically perform its contract. The purpose of its creation should be fulfilled, and its corporate franchise used for the benefit of the people who created it. No remedy should be required against it except one to enforce the performance of the *trusts* which they hold from the legislature. This corporation is simply a *trustee* for the people, to furnish gas upon certain conditions to an applicant, and they should be specifically required to furnish it, and no *other remedy* should be deemed necessary than a mandamus, for default on their part. This principle should govern the courts in all cases where a corporation neglect or refuse to execute the trusts of their franchise of a public character. Upon authority, the remedy against the defendants *after the execution* of the contract, was by mandamus; they had no discretion to exercise then, their duty was purely ministerial; that is, to execute their corporate functions. (*The People* agt. *Steele*, 2 *Barb.* 397; *Rex* agt. *Barker*, 3 *Burr*, 1265; *People* agt. *Flagg*, 16 *Barb.* 503; *Runkel* agt. *Winemiller*, 4 *Har. & McHen.* 430; 23 *Wend.* 458; *The People* agt. *Mead*, 24 *N. Y. R.* 114; *The People* agt. *Supervisors, &c.* 35 *Barb.* 426, *affirming* 23 *Wend.* 458.)

This is not the case of the exercise of a discretionary power by the defendants. They exercised their discretion when they accepted the deposit for one year, and executed the contract to furnish the gas, and waived the payment of arrears. From that time they had no discretion; that was discharged; their duty, therefore, became purely ministerial. The language of the statute is "*the company shall supply,*" leaving no discretion to be exercised.

III. The relator has no other adequate and specific remedy but the writ of mandamus. No action will lie under section 6, for the penalty therein mentioned. The refusal to furnish gas, which gives the party an action for the penalty, must be *at the time of the application in writing.* The refusal in this case was nine months after this application,

and the defendants would, in an action for the penalty, insist that the relator could not recover because there was no refusal within the meaning of the statute.   There is no statutory right to the penalty in the relator, and no specific remedy given him by statute.   Besides, the action for the penalty furnishes no adequate remedy to the relator. Gas for illuminating purposes in a large city, where the dwellings are built expressly for its consumption, is indispensable to the comfort and wants of its inhabitants, and gas companies should not be allowed to arbitrarily deprive the citizen of its use.   Gas has ceased to be a luxury, and become a necessity, and no adequate remedy exists at law by action against a corporation, for its deprivation.   The demands for gas are immediate in a family using it, and no remedy by action against the defendants is adequate to an immediate restoration of it.

IV.  In *Rex* agt. *Barber* (*cited ante*), Lord MANSFIELD held that this writ was introduced to prevent disorder from a failure of justice and defect of police.   Therefore it ought to be used on all occasions where the law has established no specific remedy, and where in justice and good government there should be one.   No gas light corporation should be allowed the whim or the right to supply darkness rather than light to a great city, when its demands allowed by statute, have been fully paid, nor to disregard its solemn written contracts made with the citizen, upon a consideration to perform its chief corporate function.   Suppose the company should refuse to supply the city corporation under the same circumstances of refusal to the relator, must the city be left in darkness, and resort to its remedy for the penalty ?   The courts would unhesitatingly issue the writ in such a case.   Why not, therefore, in this ?   Public interest and policy demand it in each case.

So far have these principles been applied that the courts have held that the writ lies against a corporation to exercise their functions according to law, notwithstanding they

may be liable to an action for refusal. (*McCullough* agt. *Mayor*, 23 *Wend.* 458; *Matter of Trustees, &c.* 1 *Barb.* 34; *People* agt. *Mead*, 24 *N. Y. R.* 114; *cited ante*, 35 *Barb.* 426.) Public duties from a corporation are different from private. Duties to the public will be enforced by the writ when private rights would be disregarded. For sanitary and other public interests, less liability to fires by the use of gas, less liability to accidents from illuminating oils, and greater economy, the writ should issue against a gas light company. The principle to be deduced from the cases is this: The writ will lie where public interests are to be enforced against a corporation, though a remedy at law may exist in favor of the relator. This doctrine is fully established upon a review of all the authorities by the court in the case of *The People* agt. *Mead* (24 *N. Y.* 114). The order of Judge BARNARD should be reversed, and the writ issued.

BENJAMIN W. BONNEY *and* THATCHER M. ADAMS, *for respondents.*