13243

SPIVEY, SHERIFF, v FIDELITY & DEPOSIT CO. OF MD. *ET AL.*
SAME v. BLACKWOOD, GOVERNOR
LANGFORD v. SPIVEY

(160 S. E., 275)

*Messrs. H. Klugh Purdy* and *R. E. Whiting,* for petitioner.

*Messrs. Charles E. Perry, Jr.,* and *George Warren,* for respondents.

September 16, 1931.

The opinion of the Court was delivered by Mr. CHIEF JUSTICE BLEASE.

In the general election of 1928, Ben F. Spivey was elected to the office of sheriff of Jasper County for the usual term of four years. Before entering upon the duties of his office, he executed the required official bond for the full term, upon which the Fidelity & Deposit Company of Maryland became the surety; the said bond being approved by the proper authorities, the County Commissioners of the county. As provided in Section 749, Volume 3, Code of 1922, the cost of the premium on the bond was paid by the County Commissioners out of the ordinary county funds for the years 1929 and 1930. The premium for the year 1931 has not been paid, but payment would have been made if the surety company had filed, according to its usual custom, its claim therefor with the Board of County Commissioners.

On June 12, 1931, the surety, the Fidelity & Deposit Company of Maryland, addressed and caused to be delivered, to the chairman of the Board of County Commissioners, a communication in which it said: "In accordance with the provisions of Chapter 18, Article 1, § 15 of Volume 3, Code of Laws of South Carolina, 1922, this company notifies the Board of County Commissioners of its desire to be immediately relieved from its suretyship on said bond of Ben F. Spivey, Sheriff of Jasper County, South Carolina."

On June 16, 1931, the Board of County Commissioners addressed and had delivered to Mr. Spivey a notice, wherein was recited the fact that the surety on his official bond desired to be immediately relieved from its suretyship, and notified him "to file with us within thirty days from the date of this letter a bond as required by law for the Sheriff of Jasper County."

In neither the communication from the surety to the commissioners nor in the notice from the commissioners to Spivey was given any reason for the desire of the surety to be relieved from its suretyship.

Spivey took no steps to file a new bond, as required by the notice of the county commissioners, resting, it appears, upon the legal position taken by him that the surety could not be relieved from the suretyship, and that it was not necessary for him to file the bond demanded, which legal position is hereinafter adverted to.

Within a few days thereafter, the exact date not being before us, in an action instituted by Spivey against the surety company and the Board of County Commissioners, his Honor, Circuit Judge J. Henry Johnson, of the Fourteenth Judicial Circuit, in which the County of Jasper is embraced, issued his order, which appears in the record without date, requiring the surety company and the county commissioners to show cause before him, on a date not appearing in the record, why they should not be enjoined and restrained from further proceeding to relieve the surety company of its suretyship on the official bond of Spivey, as sheriff, and from further proceeding to require Spivey to execute and file with the county commissioners a new official bond.

In the complaint of Spivey, upon which the rule to show cause was based, he alleged that on or about January 1, 1929, the defendant surety company agreed and contracted with the county commissioners to become surety on his official bond as sheriff of the county in consideration of the sum of $200.00, payable in annual premiums of $50.00 per

annum, the contract of suretyship to continue for the whole period of the term of office to which Spivey had been elected; that the contract, and the bond executed in pursuance thereto, were for the specific use and benefit of Spivey; that the surety could not be relieved from its bond during the contracted time, and the county commissioners could not legally relieve the surety from its suretyship.

In its return, the surety company alleged that Spivey had breached the conditions of his bond in two respects: First, in that Spivey, the principal, had failed to pay a judgment in the sum of $200.00, recovered against him and his surety on his official bond, in May, 1931, in an action brought by one T. S. Smith in the Court of Common Pleas for Jasper County, which judgment the surety had been forced to pay; and, second, that Spivey had not made the proper settlement with the county treasurer, prior to June 12, 1931, for taxes collected by him for the year 1929, although many demands for settlement therefor had been made by the county treasurer, and the time allowed to Spivey by law for making such settlement had expired many months prior to June 12, 1931, the date the surety filed its requests with the commissioners to be relieved from the bond.

In their return to the rule to show cause, the county commissioners alleged that Spivey had breached the conditions of his bond in many particulars, asserting that he had collected on delinquent tax executions placed with him by the county treasurer several hundred dollars, which he had not turned in to the treasury, and that in numerous instances, although collecting in full the amounts due on executions, he had falsely returned the same as *nulla bona;* that is, that they had not been, and could not be, collected. A detailed statement of the alleged irregularities and defalcations charged against Spivey was set forth in the return. Affidavits in substantiation of the breaches of the conditions of the bond, alleged on the part of Spivey to have been committed, made by twenty-one persons, were submitted with the re-

turn. One of the affidavits was by Mr. W. A. Berg, County Treasurer, declaring that Spivey had not made a settlement with his office for the 1929 delinquent taxes, although the treasurer had been trying for months to get such settlement. The commissioners further averred that in the very near future there would be placed with the sheriff, under the law, other tax executions for collection, amounting to the sum of approximately $30,000.00; that the bond of the sheriff was not of sufficient amount to protect the county and State because of the shortages already existing; and that a new bond should be executed for their protection.

Spivey did not in any way traverse the returns of the surety company and the commissioners, standing entirely upon the legal position that the surety could not be released from the bond for any cause whatsoever.

After a proper hearing, Judge Johnson, on July 14th, passed an order dismissing the rule to show cause and refusing the motion for a restraining order. He held: "The return of the Board of County Commissioners shows various irregularities by the said Sheriff in the collection of tax executions and in the disposition of the money collected on said executions. The action taken by the said Board of Commissioners to relieve the surety is well supported and warranted by the facts as submitted to me in the return and affidavits and receipts attached."

Spivey gave notice of intention to appeal from the order of Judge Johnson, but made no application to this Court, or any of the justices, for a supersedeas order.

The matters to which we have referred in the cause before Judge Johnson are involved in the action entitled, "Ben F. Spivey, as Sheriff of Jasper County, South Carolina, Plaintiff, against Fidelity and Deposit Company, of Maryland; and John M. Langford, P. P. Johnson, J. H. Mock, G. C. Smith and C. G. Thomas, as Members of the Board of County Commissioners of Jasper County, South Carolina, defendants."

Following the order of Judge Johnson, the County Board of Commissioners of Jasper County, at a meeting on July 17, 1931, adopted a resolution to the effect that the surety company be relieved as surety on the bond of Spivey as soon as a proclamation was issued by the Governor declaring the office of sheriff vacant, reciting in the said· resolution, and as grounds therefor, in brief, the following things: (1) That the Fidelity & Deposit Company of Maryland had notified the board of commissioners on June 13, 1931, of its desire to be relieved as surety on the bond of Spivey, as sheriff; (2) that the commissioners, pursuant to their action of June 16, 1931, notified Spivey that he was required to file a new bond with the board within thirty days; and (3) that Spivey had not filed the bond as required within the said time.

The County Board of Commissioners having advised his Excellency, the Governor of the State, of the resolution adopted by them, and the matters which occasioned the passage of the said resolution, a hearing was had before the Governor, at which attorneys for the commissioners and for Spivey appeared. At that hearing the attorneys for Spivey reiterated their former position that the action of the surety company and that of the county commissioners were void, for the reason that the surety could not, under the law, be released from its suretyship, that there was no requirement of law that Spivey should, under the circumstances, execute a new official bond, and, accordingly, there was no vacancy in the office of sheriff, and no legal ground upon which the Governor could declare the office vacant. The Governor, it appears, had before him a complete record of all the happenings prior to the request for action on his part, including the papers used at the hearing before Judge Johnson.

On July 21, 1931, his Excellency, Honorable I. C. Blackwood, Governor of the State, issued and published his proclamation declaring the office of sheriff of Jasper County

vacant. In his proclamation, he recited that the Fidelity & Deposit Company of Maryland, surety on the bond of the incumbent sheriff, Spivey, had given proper notice that it desired to be relieved as such surety; that the county commissioners of Jasper County in its meeting of June 16, 1931, notified Spivey to file a new bond, as required by law; and that the time for filing the said new bond had expired without Spivey complying with the demand of the commissioners. The proclamation recited in full, and was based upon, the terms of Section 748, Volume 3, Code of 1922, hereinafter set forth.

Following his action of declaring a vacancy in the office of sheriff of Jasper County, his Excellency, the Governor, on July 21, 1931, appointed G. L. Langford to the office of sheriff of the county. Langford duly qualified by taking the oath of office and filing the required bond. On July 31st, proper commission as sheriff of Jasper County was delivered to him. Spivey refused to surrender the office to Langford upon the demand of the latter.

In the meantime, Spivey applied to Mr. Justice Carter of this Court for a writ of *certiorari,* for the purpose of reviewing the act of the Governor; but the application was denied. Spivey gave notice of his intention to appeal from the order of Mr. Justice Carter, and applied to this Court for an order staying all proceedings pending that appeal. We heard the application for a writ of supersedeas on August 6, 1931. In a per curiam order, filed that day, in that case, entitled *"B. F. Spivey, Petitioner, v. Honorable I. C. Blackwood, Governor, Respondent,"* 161 S. C., 521, 159 S. E., 927, we held that the action of the Governor in declaring the office of sheriff of Jasper County vacant was executive in its nature, and "not subject to review at this time in this proceeding."

On August 7, 1931, in the matter of "G. L. Langford, Relator, against B. F. Spivey, Respondent," based upon Langford's petition, in which he declared himself en-

titled to the office of sheriff of Jasper County by virtue of
the proclamation of the Governor and his appointment to
that office by the Governor, the Chief Justice, in the original
jurisdiction of the Court, issued an order requiring the re-
spondent, Spivey, to show cause before him on August 14,
1931, why a writ of mandamus as prayed for in the petition
of Langford, requiring Spivey to deliver to Langford the
office of sheriff and the records and insignia appertaining
thereto, should not be issued. To that order, Spivey made
return, taking therein the positions that the surety had no
right to be released from the bond; that the county com-
missioners should not have required him to execute a new
bond; that the Governor should not have declared the office
of sheriff vacant, since no vacancy existed; that the appoint-
ment of Langford was illegal; and that Spivey was the duly
constituted and authorized sheriff of Jasper County.

Upon the call of the mandamus proceeding for hearing
before the Chief Justice, the attorneys for Langford and for
Spivey agreed that all matters relating to the disputed title
to the office of sheriff of Jasper County should be referred
to the Supreme Court, and that this Court, in one hearing,
should hear and determine the appeal from the order of
Judge Johnson, the appeal from the order of Justice Carter,
a review of the order of his Excellency, the Governor, and
the mandamus proceeding brought against Spivey by Lang-
ford: in short, that this Court should for once and all decide
if Langford or Spivey was entitled to be and act as sheriff of
Jasper County. This commendable action, with the purpose
of expediting a vexed and troublesome question, relating to
a very important office, on the part of the attorneys was ap-
proved by all the members of the Court, and pursuant to the
order of the Chief Justice thereabout, the Court convened in
special session on August 18, 1931, and heard all the causes
above entitled.

The surety on Spivey's bond and the Board of County
Commissioners, as well as his Excellency, the Governor,

proceeded under the terms of Sections 747 and 748, Volume 3, Code of 1922, which sections are as follows:

"(747) § 15. *Surety May Demand Relief—New Bond—Release of Prior Sureties.*—When any of the sureties of any officer elected or appointed to any office shall, in writing, notify the proper officer, whose duty it is to approve the bond of such officer, that they desire to be relieved from their suretyship, it shall be the duty of the officer authorized by law to approve the same to require said officer to execute a new bond with surety, which, when approved, shall be as valid as the bond given on the original election or appointment of such officer; and the sureties upon the prior bond shall be released from responsibility for all acts or defaults of such officer which may be done or committed subsequent to the approval of such new bond.

"(748) § 16. *Duty of Officer Regarding New Bond—Proceedings—Office Declared Vacant—Vacancy Filled.*—When any officer shall be required to execute a new bond, with surety, as provided for in Section 15, he shall proceed forthwith to execute such new bond, and submit the same for approval to the officer authorized by law to approve the same, and if he shall fail or neglect to so execute and submit such new bond, or fail or neglect to execute and submit a bond satisfactory to the officer authorized to approve the same within thirty days after having been required so to do, the said officer, as the case may be, shall forthwith report to the Governor of the State that such officer has been duly required, under the provisions of Section 15, to furnish a new bond, and that such officer has failed so to do, and, upon being so informed, and upon receiving a certified copy of all the papers relative to the case, it shall be the duty of the Governor, by public proclamation, forthwith to declare the office held by such defaulting officer vacant, and such office so made vacant shall be filled in the manner now provided by law."

Section 748 was, as indicated above, quoted in full in the proclamation of the Governor.

Section 747 was construed and passed upon by this Court in the case of *Massachusetts Bonding & Insurance Co. v. Law et al.,* 149 S. C., 402, 147 S. E., 444, and the incumbent sheriff, Spivey, rests his claim, as we understand his position, altogether upon the decision of this Court in that case.

Briefly stated, the facts of the cited case were as follows: The surety company was surety on the bond of the county treasurer. Without any reason whatever stated by it, except its desire to be released as surety, the surety company, under the provisions of Section 747, gave notice to the county commissioners that it desired to be released from the bond. The commissioners refused the request. They took the position that the surety company had contracted with them to bond the county treasurer for the full term of his office, and in the absence of any good reason the bonding company had no right, legal or moral, to demand the release of its suretyship and the cancellation of the bond. Following the refusal of the commissioners, the matter came to this Court by a petition of the surety company asking for a writ of mandamus, forcing the commissioners to require the county treasurer to execute a new bond as required by the provisions of Section 747, *supra,* thereby relieving the bonding company from further liability as surety on the bond executed by it. In the case, we held, quoting the very clear syllabus of the digesters, as follows: "Foreign surety company, executing official bond of county treasurer in accordance with Civ. Code 1922, § 736, in consideration of annual payment of premiums by the county, as provided by Section 749, was without right under Section 747 to withdraw therefrom without reason, in that such section permitting surety to be relieved on giving of proper notice relates only to accommodation surety rather than surety for compensation subject to Section 4102 and other provisions relating to foreign insurance companies."

The position taken by Spivey is practically to the effect that this Court decided in the case that, regardless of any-

thing, the bonding company was bound to remain as surety on the bond of the county treasurer; that it could not be released therefrom, even if the county commissioners consented to the release; that, accordingly, the bond of Spivey, as sheriff, was absolutely good, and would continue good, during the whole term of his office; that no one has the right to cancel the bond or release the surety therefrom, and that it necessarily follows that there never was any reason to require a new bond, or to declare the office of sheriff vacant, because of his failure to file such required bond, even though Spivey had breached the conditions of the bond theretofore executed by him, as principal, and the Fidelity & Deposit Company, as his surety, and approved by the commissioners.

The contention made is based upon certain language used by the writer of the opinion in the case, who happens to be the writer of this opinion, which was as follows: "While the matter appears not to be involved in any way in the decision of the case at bar, it is due Mr. Murph, the county treasurer, that it be stated that no charge of any kind, reflecting in the slightest manner upon his contract, either as a man or as an official, is shown in the record."

The quoted statement appeared in the history of the case. The writer of the opinion was glad to state that there was no charge of wrongdoing on the part of one of the trusted officers of the State. Turning from, but on, that history, in declaring the law applicable to the case, the Court said: "It appears from the undisputed facts of this cause. that the petitioner [the surety company] contracted with the respondents to become, and to remain, the surety on the bond of Mr. Murph, as county treasurer, for a period of four years. * * * Those are the only agreements contained in the contract so far as the Court is advised. There is no charge by petitioner of any breach of the contract on the part of the respondents, either the county board or Mr. Murph."

Discussing the distinction between the rights of accommodation sureties and the rights of foreign insurance com-

panies, in which we held surety companies were included, we said: "We know of no law that permits 'foreign insurance companies,' or other insurance companies for that matter, to be relieved from their contracts just because they desire not to carry them out. And the only reason given by the petitioner for seeking release from its contract with the respondents is its desire to be released."

We expressly held in the case that it was the duty of a surety company "to observe contracts made." The contract of the county official, so far as he was connected with the bond in that case, was to the effect that he would "well and truly perform the duties of said office, as now or hereafter required by law, during the whole period he may continue in said office." Section 736, Vol. 3, Code of 1922, as to the form of bond to be given by all public officers.

There was nothing in the record in the case of *Massachusetts Bonding & Insurance Co. v. Law et al., supra,* directly or indirectly, either from the surety company or the county commissioners, charging that Mr. Murph, the county treasurer, had failed to perform the conditions of his bond. Unfortunately, the same cannot be said of Mr. Spivey in this case, which statement the Court regrets to make, just as much as it was delighted to say in the former case that there was no charge of wrongdoing against the county treasurer, Mr. Murph.

There was a contract on the part of the surety company, Mr. Spivey, and the county commissioners of Jasper County. The contract was, as stated in the *Law case,* that the surety company would bond for the full period of Mr. Spivey's term in the office of sheriff. But Spivey agreed in that contract that he would "well and truly perform the duties" of the office of sheriff of Jasper County, and the surety company guaranteed that Mr. Spivey would carry out that contract. The surety company had no right to be released from its contract, so far as the future was concerned, if Spivey "well and truly" performed the duties of his of-

fice. And the county commissioners had no right to relieve the surety company from its contract so long as Spivey complied with the conditions of his bond. The *Law case* went no further than that. Anything there appearing, which would indicate that the Court intended to go further, and to hold that an unfaithful official might continue in his unfaithfulness because some surety company had trusted him enough to become his surety, if the language so indicated, was a very unfortunate statement. We do not think, however, that any language in that opinion would justify any reasonable conclusion to the effect that this Court ever held, or intended to hold, that a faithless officer might continue to hold his office, because forsooth a surety company had signed his bond guaranteeing his faithful performance of his duties, and the county commissioners had paid the premium on the bond. If the quoted language, depended upon to sustain a contrary view, is read carefully, it will be seen that the main purpose of the statement was to impress upon the mind of the reader the fact that Mr. Murph, the county treasurer, had not been charged, either directly or indirectly, with anything "reflecting in the slightest manner upon his conduct, either as a man or as an official," and to make clear that the surety company in that case desired to be relieved from its suretyship without any just cause.

If Spivey breached the conditions of his bond to "well and truly perform" the duties of his office, not only the surety company but the county commissioners had the right to ask, in the proper manner, to be released from the bond, so as to protect themselves from further breaches on his part. The contract of the surety company, as well as the contract of the county commissioners, depended upon Spivey carrying out the conditions of his contract to be faithful in the performance of his duties as sheriff. When Spivey breached the conditions of his bond, if he did so, all the law and common sense gave the commissioners and the surety company the right to protect themselves from future breaches.

It is argued with considerable force that Spivey, as principal, had rights in the bond and rights in the contract on the part of the surety to bond him. Conceding that, for the purposes of this decision, the answer is that all the rights Spivey had, whatever they were, depended upon a faithful performance on his part of the contract, and the bond upon which the contract was based. If he breached the contract or the bond, under all the rules of law and equity, he had no right to demand that either of the other parties should continue to perform their part of the contract.

We think the proper course which the surety company should have pursued, in making its demand for release from future liability on Spivey's bond, was to present to the commissioners, along with its demand for such release, the grounds upon which it based that demand. The county commissioners then should have investigated the charges, giving Spivey proper opportunity to answer them. Under our law, a Board of County Commissioners is a Court for certain purposes, and the right to approve or disapprove bonds comes within its jurisdiction.

Under the showing first made to the county commissioners by the surety company, only a demand that it be released from liability, the commissioners might well have refused to act in any manner favorable to the demand of the surety company. The commissioners, however, waived that right for reasons not then appearing, but later shown to have been founded upon a very good cause.

For the views indicated, we are not prepared to hold that the proceedings on the part of the surety company and the commissioners, requiring a new bond on the part of Spivey, were regularly carried out. Nevertheless, we cannot, under the circumstances, reach the conclusion that the order of Judge Johnson, or the after proceedings on the part of his Excellency, the Governor, were erroneous as matters of law. It has been said that even where an officer has been irregularly removed, yet, where just cause for his removal appears,

the Courts may refuse him relief on the ground that to restore him would be a fruitless act since he could be at once removed by proper proceedings. Note, 36 A. L. R., 508. "If it appears the removal or suspension is merely irregular, legal cause for it existing, restoration will not be compelled. It would be useless, when the instant of restoration an order of removal or suspension could be legally made." *Ex parte Wiley,* 54 Ala., 226. "We are not obliged to do so absurd a thing as to order a person to be restored to an office (however irregularly he has been removed from it), who ought to be removed again the moment he is restored." Best, J., in *Rex v. Griffiths* (Eng.), 106 Eng. Reprints, 1358.

Although the surety company did not present to the county commissioners, along with its request to be released from the bond, the grounds upon which it based that request, and the county commissioners acceded to its request without asking for its grounds, both the surety company and the county commissioners, in the hearing before Judge Johnson, in the action brought by Spivey, set forth grounds which, so far as we are now advised, were entirely sufficient to justify both the surety company and the commissioners in their action in the matter. There was a very strong showing made before Judge Johnson that Mr. Spivey had not been faithful to his trust and had not performed the conditions of his bond. Mr. Spivey made no effort to refute this showing in the hearing before Judge Johnson, and from the affidavits there submitted Judge Johnson could not find otherwise than that the commissioners were justified in the action they had taken for the protection of the county and all those interested in the proper performance of the duties of the office of sheriff. In the hearing before his Excellency, the Governor, where he passed upon the numerous irregularities and wrongful acts alleged to have been committed by Mr. Spivey, there was nothing on the part of that official to show that the charges against him were unfounded. Even at the bar of this Court, in only a few minor instances, has

there been any attempt to refute the serious charges laid at the door of Mr. Spivey. He has dared to stand upon what he conceived to be a technical legal right, and has not offered to defend himself from the gross charges of official misconduct brought against him by the County Board of Commissioners of his county, charged with the important duty of seeing that the officers of the county have sufficient bonds to protect the general public from wrongdoing as well as the taxpayers whose interests are entrusted so much to his care.

We held formerly in the case of *Spivey v. Governor Blackwood*, 161 S. C., 521, 159 S. E., 927, on application for a writ of supersedeas pending an appeal from the order of Mr. Justice Carter, that the act of the Governor declaring a vacancy in the office of sheriff of Jasper County was executive in its nature and not subject at the time to review in that proceeding. The facts were before the Governor for determination just as they were before his Honor, Judge Johnson, for his decision. Both the Governor and Judge Johnson have held that the facts were such as to justify the Board of County Commissioners in releasing the surety on Sheriff Spivey's bond, and demanding the officer to file a new bond as required by the statute.

Under the law of this State, a sheriff is required to give a good and sufficient bond, with proper surety, guaranteeing the faithful performance of the duties of his office. The affidavits presented to Judge Johnson and to Governor Blackwood were entirely sufficient to show that the County of Jasper, the State of South Carolina, and all those supposed to be protected by the sheriff's official bond, did not have the protection the law intended for them to have. The facts before the Governor were sufficient, under all the circumstances, to justify him in declaring the office of sheriff of Jasper County vacant. When he had rightly taken this step, it was incumbent upon him to appoint some proper person to the office. This the Governor did, and his appointee is entitled to the office.

We have not gone fully into the right of Langford, the petitioner, to the writ of mandamus prayed for by him. There is no doubt, however, that the Governor's commission of Langford gives him a *prima facie* title to the sheriff's office, which, it appears, would ordinarily be sufficient to warrant the issuance of a writ of mandamus, as sought by the petitioner, Langford. *State v. Bruce,* 3 Brev. (5 S. C. L.), 264, 6 Am. Dec., 576; *Runion v. Latimer,* 6 S. C., 126; *In re Whipper,* 32 S. C., 5, 10 S. E., 579; *McMillan v. Bullock,* 53 S. C., 161, 31 S. E., 860; *Verner v. Seibels,* 60 S. C., 572, 39 S. E., 274; *Carrison v. Young,* 125 S. C., 42, 118 S. E., 32; *State v. Carpenter,* 106 W. Va., 170, 145 S. E., 184.

The right to the writ of mandamus prayed for by Langford, under the agreement of the attorneys as to a disposition of all the questions involved, is only an incidental matter. The main question to be decided is as to the title to the office of sheriff of Jasper County; all the other questions are merged in that. It is our opinion that the incumbent, Spivey, has lost his title to the office, and that the Governor's appointee is entitled thereto.

The judgment of the Court is that the relator, G. L. Langford, is entitled to the office of sheriff of Jasper County, and all the moneys, records, papers, and insignia belonging to, or in any wise appertaining to the said office, and that upon his demand therefor the same shall be surrendered to him by the respondent, Ben F. Spivey; and that a writ of mandamus be issued to put into effect the judgment of this Court.

MESSRS. JUSTICES COTHRAN, STABLER, CARTER and BONHAM concur.