For the reasons stated, the judgment will be affirmed.

*Affirmed.*

# CHARLESTON.

STATE *ex rel.* MARGUERITE HALL V. COUNTY COURT OF MONONGALIA COUNTY.

Submitted September 17, 1918. Decided September 24, 1918.

1. MANDAMUS—*When Writ Granted.*

   The existence and availability of an action at law is not the sole test for excluding relief by mandamus. To supersede the remedy by mandamus, when appropriate, the party must not only have a specific remedy at law, but one competent to afford relief upon the very subject matter and which is equally convenient, beneficial and effective. (p. 567).

2. SAME—*Exercise of Ministerial Functions.*

   A writ of mandamus commanding the county court of a county to allow and pay from the county treasury the salary of a probation officer, fixed by the circuit court and limited by statute so as not to exceed $600 per year, payable monthly, and expenses, not to exceed $100 in any year, incurred in the administration of the office and certified by the circuit court, requires the exercise of ministerial, not judicial or discretionary functions. (p. 566).

3. INFANTS—*Probation Officer—Appointment of Women—State or County Officers.*

   Although sec. 6, ch. 46A, Code 1918, requires probation officers to take and subscribe and file with the clerk of the circuit court the same oath as ''other county officers'', and vests in them ''all the power and authority of police or sheriffs to make arrests and perform any other duties ordinarily required by policemen and sheriffs which may be incident to their office or necessary or convenient to the performance of their duties'', such probation officers are not state or county officers, and hence are not within the constitutional limitation (secs. 1 and 4, Art. IV. Const.) that only those who are citizens entitled to vote may be elected or appointed to a state, county or municipal office; wherefore such limitation does not preclude the appointment of women as probation officers. (p. 569).

4.  SAME—*"Probation Officers."*

A probation officer is an officer or assistant of the court to assist in the exercise of the jurisdiction which courts of chancery have exercised from time immemorial to protect the financial, social and moral welfare of infants within their jurisdiction.  (p. 571).

5.  SAME—*Probation Officers—Powers.*

Sec. 6, ch. 46A, Code 1918, when read in conjunction with the other sections of the same act, confers upon probation officers the power and authority of policemen and sheriffs to make arrests when, and only when, such power and authority is incident or necessary or convenient to the performance of their duties as probation officers.  (p. 571).

6.  CONSTITUTIONAL LAW—*Appointment of Probation Officers—Authority of Circuit Court.*

Bestowal of authority upon circuit courts to appoint probation officers does not violate the constitutional inhibition against encroachment by any one of the three departments of the state government upon the powers of the others.  (p. 572).

Error to Circuit Court, Monongalia County.

Petition by the State for writ of mandamus, on relation of Marguerite Spragg Hall, to the County Court of Monongalia County.  Judgment for petitioner, and defendant brings error.

*Affirmed.*

*Chas. A. Goodwin, Lazzelle & Stewart,* and *Glasscock & Glasscock,* for plaintiff in error.

*C. B. Dille,* for defendant in error.

LYNCH, JUDGE:

Error to a judgment of the circuit court of Monongalia County based upon the petition of Marguerite Spragg Hall and commanding the county court of that county to pay her out of the county treasury fifty dollars monthly from November 6, 1917, for services rendered by her as probation officer, acting under an appointment as such by the circuit court in August of that year and approved by the commissioners or members of the county court and superintendent of public schools of the county, as required by the act, and also the expenses incurred by her, and then unpaid, in per-

forming the services, but in an amount not in excess of one hundred dollars for any one year, and to cause to be drawn and signed by its president and clerk proper orders therefor upon the sheriff as treasurer of the county, payable to her when so drawn and signed, as drafts upon the funds in the county treasury subject to their payment.

The questions presented upon the writ to the judgment arise upon the motion of the respondent to quash the alternative writ, overruled, and upon the demurrer of the relator to the answer of the respondent, sustained. These rulings and the award of the peremptory writ are said to be erroneous: (1) Because the acts commanded by the alternative and peremptory writs are not merely ministerial but are judicial and discretionary; (2) because there is a complete and adequate remedy by an action at law; (3) because the status of a probation officer is that of one who holds an office within the meaning of the term as it is used in the constitution and laws of this state; and (4) because of her sex the relator is ineligible to appointment and disqualified to hold any office authorized by the constitution or created by its authority.

The statute creating the office and authorizing the appointment of probation officers, ch. 46A, sec. 6, Barnes' Code 1918, empowers circuit courts of counties having a prescribed population, in this case over fifteen thousand and less than thirty thousand, to appoint "one probation officer at a salary not to exceed six hundred dollars per year", and the county to allow such officer "expenses of probation work in a sum not to exceed one hundred dollars per year", the salary being payable "in monthly installments from the county treasury" and expenses as incurred. It is further provided that the salaries of paid probation officers permitted by this act "shall be fixed by the judge, not to exceed the sums herein mentioned, and any bills for expenses, not exceeding the sums herein provided for, shall be certified to by the judge as being necessary in and about the performance of the duties of probation officer or officers."

Apparently there is no basis for the exercise of any judicial or discretionary power by the county court of a county whose population is within the limitation prescribed, Mon-

ongalia County being of that class, as to the payment of the salary monthly, because, the annual salary being once fixed by the circuit court, the ascertainment of the monthly payment is a mere matter of mathematical calculation and requires neither judicial investigation nor the exercise of discretionary power. All that is necessary for the county court to do is to apply the well understood rules of computation and direct the president and clerk to draw, sign and deliver each month orders on the county treasurer payable to the claimant for one-twelfth of the annual salary, just as is done ordinarily in respect of the salaries of prosecuting attorneys and other county officers, and doubtless as that court did as regards the salary of the relator when paying her for the months of September and October, 1917.

What, if any, expense account the relator claimed and the county court allowed and ordered paid for these two months, or was claimed by her for any subsequent month or months, the record furnishes no data to show. There is nothing to indicate a refusal to allow any expense account covering the first two or any subsequent months, and if their allowance called for the exercise of any discretionary power, the power was confined within the maximum limit prescribed by the act itself. To that extent she was entitled to reimbursement monthly until the limit was reached, if approved by the circuit court, and if an audit of the account verified the justness of the items. She could not claim reimbursement in an amount in excess of one hundred dollars, and the county court could not reduce the maximum limit below that amount of their own accord. We fail to discover in this process any reasonable demand or requirement for the exercise of discretionary power.

The existence and availability of an action predicated upon the claim of the relator, though unquestioned, is not the true test for excluding relief by mandamus. If, as averred in the petition or as may be implied from such averments, she was not ineligible as an appointee under the act, and possessed the qualifications prescribed by it, and performed the duties incident thereto upon an annual salary fixed by the circuit court and payable in monthly install-

ments as expressly authorized and required, she undoubtedly could sue to enforce payment of the compensation she claims. But to preclude the right to resort to mandamus, such other remedy, when otherwise appropriate, must be adequate and equally well adapted to right the wrong complained of. If it be incomplete or less direct and effective, the court may in the exercise of a sound discretion either grant or refuse the writ. In *Pipe Line Co.* v. *Riggs,* 75 W. Va. 353, 356, there was, as it appears, a clear and express remedy given by statute to compel a sheriff to pay county orders lawfully drawn upon him, yet the common law coercive writ was upheld because more convenient, direct, beneficial and efficient. When these elements concur, mandamus is proper as a mode of redress, although there may be another legal remedy for the same wrong. See also *Bunch* v. *Short,* 78 W. Va. 764, 775. In *Nicholl* v. *Kosler,* 157 Cal. 416, 108 Pac. 302, the propriety of the remedy by mandamus to compel the auditor of the city and county of San Francisco to approve and allow a demand payable out of the county treasury for the monthly salary of an assistant probation officer appointed by the superior court thereof acting as a juvenile court under the ''Juvenile Court Law'' was not even questioned.

The third and fourth grounds assigned for quashing the alternative writ and for denying the relator the relief she seeks by the writ may properly be combined and discussed together. The title of the statute under which authority she was appointed is: ''An act relating to children who are now or may hereafter become dependent, neglected or delinquent; to define these terms, and to provide for the treatment, control, maintenance, protection, adoption and guardianship of the persons of such children; to define contributory dependency, negligence and delinquency, and to make the same a misdemeanor, and to provide for the punishment of persons guilty thereof; to authorize county authorities to establish and maintain a detention home for the temporary care and custody of dependent, delinquent or neglected children; and to levy and collect a tax to pay the cost of its establishment and maintenance.'' The object thus declared is the care, treatment, control, protection and guardianship of dependent,

neglected and delinquent children, an object beneficent, hu-
manitarian and utilitarian.    The act, section 6, confers au-
thority upon the circuit court of a county having the pre-
scribed population to appoint one or more probation officers
to aid the court in enforcing its provisions, provisions which
the act itself, section 42, declares ''shall always be liberally
construed in favor of the state for the purpose of the protection
of the child from neglect or omission of parental duty toward
the child by the parent, as well also to protect .the children
of the state from the acts * * * or bad example of any per-
son or persons whomsoever, which may be calculated to cause,
encourage or contribute to the dependency or delinquency of
children, although such persons are in no way related to the
child.''   Properly interpreted, the object is to provide that
moral and intellectual training, culture and efficiency which
will contribute to good behavior and manners, and thereby to
prepare and qualify the youth of the.state to enter upon the
discharge of the duties of exemplary citizens, when, owing to
the neglect or indifference of their parents, they may become
public charges or morally and physically delinquent or de-
fective.

. Because section 6 of the act requires probation officers to
take and subscribe and file with the clerk the same oath as do
other county officers, and vests in them ''all the power and
authority of police or sheriffs to make arrests'', respondent
contends that they are county officers and hence come within
the constitutional limitation (sections 1 and 4, Art. IV.
Const.) that only those who are citizens entitled to vote may
be elected or appointed to a state, county or municipal office.
Hence they conclude the relator, because of her sex and ex-
clusion from the privilege of exercising the elective fran-
chise, is not eligible to an appointment as a probation officer,
and by reason of the ineligibility cannot coerce payment of
the salary allowed or expenses incurred in performing the
duties incumbent upon such officer.

To the bestowal of the functions exercised by policemen
and sheriffs the statute itself expressly makes a significant
and important qualification, which, when liberally interpreted
to accomplish the object designed by the act, means that pro-

bation officers shall exercise only such functions as are neces-
sary or convenient for the performance of their duties, and
not otherwise.  This construction of the statute does no
violence to the rule governing the relation between pronouns
and their antecedents, as this relation is to be determined not
wholly by the proximity of the one to the other but from the
entire context, when necessary to ascertain its true mean-
ing.  Grammatical construction will not prevail if a different
construction will give effect to the intention shown by the
statute when read in its entirety.  *Harman* v. *Howe*, 27
Gratt. 676, where the court supplied the word "dollars"
omitted from an injunction bond.  Grammatical use of words
need not be adhered to in construing a deed where a contrary
intent is apparent from the whole instrument.  *Jackson* v.
*Topping*, 1 Wend. 388, 19 Am. Dec. 515, where the court
holds that "and" may be construed "or" if such seems to
be the intent.  While these rules are applicable to written
contracts or other legal documents between private parties,
they are equally forceful and pertinent as regards the con-
struction of constitutions and statutes.  2 Lewis' Sutherland
Statutory Construction (2nd. Ed.), sec. 348, says:  "The
application of the words of a single provision may be en-
larged or restrained to bring the operation of the act within
the intention of the legislature, when violence will not be
done by such interpretation to the language of the statute."

In so far as the language employed is material and sig-
nificant in determining the true intent, the provision is:
"Probation officers receiving a salary or other compensation
from the county, provided for by this act, are hereby vested
with all the power and authority of police or sheriffs to make
arrests and perform any other duties ordinarily required by
policemen and sheriffs which may be incident to their office
or necessary or convenient to the performance of the duties."
The word "which" of course has for its antecedents the nouns
"power" and "authority".  The pronoun "their" does not,
however, relate to the office or duties of sheriffs and police-
men but to the more remote subject of the verb "are vested".
Read as so construed and interpreted, the provision seems
to confer upon a probation officer the power and authority

of policemen and sheriffs to make arrests when, and only when, such power and authority is incident or necessary or convenient to the performance of the duties of probation officers.

This qualification pervades the whole act. The duties in connection with which or out of the exercise of which such authority may be presumed to exist are: To make an investigation of the situation, condition and environment of every child brought before the court, which for the purpose of administration is denominated a Juvenile Court; to be present in court to represent the interest of the child when the case is heard; to furnish such information and assistance as the court or judge may require; and to take charge of any child before and after the trial as may be directed by the court (sec. 6); the duty to make a friendly visitation to the home of any male or female child under the age of eighteen years which the court may find to be delinquent within the meaning of the act and allow to remain at its own home (sec. 9); to care for and keep in some suitable place, provided by the city or county outside of the inclosure of any jail or police station, such children under twelve years of age who are unable to give bail and are committed to his care (sec. 15); and the same right, duty and power as have prosecuting attorneys to file complaints against any person under this act, and to prosecute any such case, or to apply to the prosecuting attorney to prepare such complaints and prosecute any such case for him (sec. 40). These are the duties that limit and define the extent of the power conferred upon probation officers to make arrest.

The act plainly discloses an intention to enlarge and reinvigorate the jurisdiction which courts of chancery have exercised from time immemorial to protect the financial, social and moral welfare of infants within their jurisdiction, and to extend to them the parental care of the state; and, to facilitate the accomplishment of these humanitarian ends and objects, it authorizes the juvenile court to appoint assistants, who, for want of a more appropriate name, usually are denominated probation officers. Their duties are defined and partake somewhat more nearly of the functions of attorneys

at law, masters in chancery, commissioners to sell and convey real estate, receivers of property *in custodia legis* and referees in bankruptcy, than of the powers of sheriffs and other like officers. In other words, they are officers or assistants of the court, and not state, county or municipal officers within the meaning of Art. IV. of the constitution. This is the view taken and upheld by the Illinois court under a similar statute. *Wilter* v. *County Com'rs.*, 256 Ill. 616, 100 N. E. 148; *People* v. *C. B. & Q. R. R. Co.*, 273 Ill. 110, 112, 112 N. E. 278. For the contrary view, however, see *Nicholl* v. *Koster*, 157 Cal. 416, 108 Pac. 302, and *Reed* v. *Hammond*, 18 Cal. App. 442, 123 Pac. 346.

The final objection goes to the right of the juvenile court to appoint probation officers, and is based upon the theory of inhibition against encroachment by any one of the three departments of the state government upon the powers of the others. All authority, however, recognizes the impossibility or impracticability of wholly avoiding every form of encroachment by each department upon the province of the others. They have a common purpose, the due and orderly prosecution of the object for which all government is ordained. No one department can fully and completely fulfill or discharge the duties allotted to it without at least in part exercising some function belonging to one or both of the others. But upon the construction given to the statute the juvenile court may properly be authorized to appoint assistants when necessary to the due and complete accomplishment of the powers conferred upon it.

Commissioners in chancery and for the sale and conveyance of real estate, receivers and other functionaries are necessary to enable courts to effectuate the administration of justice. The governor appoints his private secretary and stenographer to aid in the discharge of his duties, and the state pays for the service; each house of the legislature elects a clerk, sergeant-at-arms and committee clerks and pages to render it like aid and assistance, and so may each of the state officers for the same purposes, the salaries of the several appointees being chargeable to and paid by the state. Some of them have the power to apprehend for cause, when

ordered so to do by the body whose officer he is. As an illustration of the essential character of some instrumentality to assist in promoting justice by courts established for that purpose are jury commissioners, whom circuit courts may appoint and whose compensation is fixed by law and paid by the county court. The act granting this power was upheld in *State* v. *Mounts,* 36 W. Va. 179, 183-4. They go, the court said, "to make up a part of the judicial machinery such as commissioners in chancery", etc. The California and Illinois cases cited, though the former are not in accord with the latter on other legal propositions, agree in sustaining the power vested in courts to appoint probation officers, as and when necessary, as assistants in the administration of the law having for its purpose the care and protection of dependent, neglected and abandoned children. *Witter* v. *County Com'rs., supra; Nicholl* v. *Koster, supra.*

Perceiving no error therein, we affirm the judgment awarding the coercive process.          *Affirmed.*