# CHARLESTON.

State *ex rel.* John H. Looney *et al. v.* W. A. Carpenter

(No. 6413)

Submitted October 10, 1928.   Decided October 16, 1928.

*John T. Simms* and *W. S. Ryan,* for relators.
*Grover F. Hedges* and *Harper & Baker,* for respondent.

LIVELY, PRESIDENT:

The alternative writ requires W. A. Carpenter to turn over to relator John H. Looney the keys to the sheriff's office, the books, records, moneys and other properties in his custody as sheriff of Roane County, or show cause why he should not do so.

The proceeding is based on a failure of Carpenter to give additional bonds as sheriff of Roane County, required of him by the county court under section 20, Chapter 10, Code, which section reads as follows:

> "The court, board or officer by whom any official bond is required by law to be approved, or the successor of any such officer may at any time require from any officer by whom such bond may have been given, a new bond, or an additional bond to that already given, to be approved by such court, board or officer, or the successor of such officer. If the officer so required to give a new bond, or to give such additional bond, shall, after being notified of the requirement, fail to comply therewith within the time required, his office shall be deemed vacant unless the time for giving such new or additional bond be extended or the requirement withdrawn. * * *"

Carpenter was duly elected sheriff in 1924 and gave bond as sheriff-treasurer, sometimes called the sheriff's general bond, for $25,000, and the school bond (section 183, Chapter 2, Acts 1919) for a like sum, both with sureties approved by the county court, and entered upon the duties of his office. Various audits were made of the affairs of his office by the state tax commissioner as inspector of public offices, one of which was made in June, 1926. The second audit filed Oc-

tober 28, 1927, found a shortage of $35,194.34; another audit filed January 30, 1928, showed a shortage of $33,397.02; and another filed July 31, 1928, showed a shortage of $33,632.98. After the last audit suit was instituted against the sheriff and his bondsmen for the sum shown by the audit; and later an indictment for embezzlement was found by the grand jury against Carpenter at the September, 1928, term of the circuit court. About $400,000 of public moneys comes into the hands of the sheriff annually. Under these circumstances the county court served notice on Carpenter requiring him to appear at a special term September 8, 1928, for the purpose of giving two additional bonds, each in the sum of $25,000, and requiring him to give such bonds in pursuance to its order of August 20, 1928, also served on him. Carpenter appeared in person on that day, and asked for additional time which was given him until September 15, 1928, at which time he appeared and announced that he was unable to give the additional bonds. The court then adjourned to September 17th. The president and members of the court together, during the adjournment of the court, requested relator Looney to fill the unexpired term. When the court convened on September 17th, Carpenter appeared and stated that he might be able to give the additional bonds required; adjournment was had from day to day for the purpose of giving time to Looney to bring his sureties into court. On October 3rd the court sat for the purpose of passing upon the sufficiency of Looney's sureties, when Carpenter by attorney appeared and tendered two bonds with certain sureties, whereupon the court investigated the land books and records of the county touching the sufficiency of the sureties of the bonds tendered, and on the following day, October 4th, Carpenter again appeared and tendered the affidavit of Poole and the other sureties on the bonds, and asked for time to bring in the proposed sureties for examination. The court declined to give further time, and found of record that the sureties on the bonds so tendered were insufficient. Whereupon the court declared the office vacant, and appointed Looney to fill the vacancy, who thereupon qualified in the manner prescribed by law, and an order was entered ordering Carpenter to turn over the office, its books and

moneys to Looney, and the court caused attested copies of the order to be delivered to both Carpenter and Looney. Carpenter refused to vacate the office, or obey the order, and this writ followed.

Carpenter's return to the writ denies that he is in arrears as shown by the audits of the tax commissioner; denies that his original bonds were insufficient; admits the pendency of a suit to recover the alleged shortage; admits that the indictment was made and that he has given bond to answer it; and denies that Looney is entitled to the office by virtue of the court's proceedings and orders. The return says that he had much difficulty in securing sureties for the additional bonds required because of the secret attempts of one or more members of the court in inducing prospective sureties not to go on the bonds, and to induce others who had signed to withdraw; and that for that reason he asked for and obtained an extension of time until the 15th of September, but was then unable to do so, and asked for a further extension which was denied. Upon learning that Looney was preparing to give bond other than by a bonding company, he renewed his efforts to get bondsmen, and on October 3rd tendered sufficient bonds, which were refused. The return says that said bonds so tendered were not refused because of the insufficiency of the sureties, but that the court was induced and persuaded to, and actually did, arbitrarily, capriciously and fraudulently refuse to accept the bonds. The replication to the return denies that any member of the court was induced to or did arbitrarily, capriciously or fraudulently refuse to accept the bonds tendered on October 3rd; or that any member of the court importuned or suggested to any person not to go on Carpenter's bonds or retire therefrom; on the contrary it avers that all members were friendly and indulgent towards Carpenter and gave him every opportunity to meet the urgent requirement consistent with their public duties and the welfare of the county; and it is again denied that the bonds were sufficient, and there is exhibited a verified statement from the county records showing the property assessed to the various sureties and the liens thereon, which shows that the

sureties were not worth more than half of the amounts required by the two bonds.

The return says that the county court induced prospective sureties not to go on respondent's bonds; and that the court was induced to and arbitrarily refused the bonds, not because they were not sufficient, but because of the sinister influence of others. This is all denied by the replication. The burden was on respondent to prove these allegations, and no proof was taken. Therefore these allegations having failed for want of evidence, the remaining substance of the return is that respondent does not owe the county as shown by the audits, and that his original bonds were sufficient. It is not material to inquire into the correctness of the audits or whether respondent is in arrear. The circumstances justified the court in calling for increase in the bonds. The amount of money passing through the hands of the sheriff annually would alone justify an increase. The statute does not say that the county court must have good cause for demanding additional bond. It is left to the court's discretion. The statute says that the court "may at any time require from any officer by whom such bond may have been given, a new bond, or additional bond to that already given, to be approved by such court." Sound public policy demands that the court or body taking such bonds shall determine the amount, and not the person who tenders it. Of course if the amount was so unreasonably large as to evince caprice or some ulterior motive, such requirement would not receive sanction. The amount here required is well within reasonable bounds, and the allegation in the return that the original bond was sufficient is without merit.

Respondent challenges by his motion to quash, the remedy of mandamus here invoked by Looney; and reliance is placed upon the general rule that title to public office cannot be adjudicated by mandamus, as enunciated in *Martin* v. *White*, 74 W. Va. 628, and other cognate decisions of this court, such as *Hutton* v. *Holt*, 52 W. Va. 672; and *Jones* v. *Kuhn*, 94 W. Va. 415. On that point it is sufficient to say that the statute says in terms that upon failure of an officer to give the additional bond required of him, after being notified of the re-

quirement, within the time required, (if it be not extended or the requirement withdrawn), his office shall be deemed vacant. His failure *ipso facto* creates a vacancy. It is then the duty of the county court to fill the vacancy for the unexpired term. Section 10, Chapter 4, Code. The appointment and qualification of Looney was regular, and he has the legal title to the office. He is sheriff *de jure*. No steps have been taken to set aside and vacate the order of the county court reciting that Carpenter had failed to give the additional bonds. This mandamus is not to try title to office. It is argued that *quo warranto* is the proper and exclusive remedy. *Quo warranto* would, no doubt, be a remedy, but it would not exclude the remedy of mandamus, which has long since lost its status as a high prerogative right of the King, and is now regarded as a writ of right and nothing more than an action at law between the parties. It is quite generally held that if there be another remedy, such remedy in order to exclude mandamus must not only be adequate but must be specific and appropriate to the circumstances of the particular case. Spelling Ext. Remedies, sec. 1375; High Ext. Remedies, sec. 17. *Bank* v. *Glass Co.*, 83 W. Va. 1 and 6. Other remedies will not exclude mandamus where the relator has a clear specific right to the performance of the duty which he asks. *State* v. *Wright*, 10 Nev. 167; *Harwood* v. *Marshall*, 9 Md. 83; *People* v. *State Treas.*, 24 Mich. 468; *People* v. *Taylor*, 45 Barb. 129; *Page* v. *Clopton*, 30 Grat. 415. The other remedy must be as complete, speedy and efficacious as that of mandamus. The situation in the instant case calls for quick remedy. The public interests demand that the controversy be speedily settled. The slower process of *quo warranto* would not meet this need. The taxpayers should know to whom they shall pay taxes. The taxes paid should be protected by adequate bond; public tranquillity should be restored, and the irenic and orderly processes of county administration continued. What remedy is more adequate, specific and speedy for this purpose than mandamus? Moreover, mandamus is the proper remedy to induct into office a person who shows a clear *prima facie* legal right thereto, and is wrongfully excluded therefrom. *Griffith* v.

176

*County Court,* 80 W. Va. 410; *Kline* v. *McKelvey,* 57 W. Va. 29.

The further point is made that the order of the county court directing respondent to turn over immediately to Looney the keys to the office and all the office room and space, equipment, office fixtures, supplies, records, papers and property of the office including all moneys and funds in county depositories or elsewhere in his custdoy, and do all things needful or necessary to effect a full and complete delivery and transfer of the office with all the properties thereunto belonging, is improper, inasmuch as respondent cannot turn over the moneys deposited in the depositories without ascertainment of the amounts, and by a court order issued to respondent and payable to Looney designating the amount to be turned over. *Snee* v. *White,* 79 W. Va. 414, is relied upon to defeat the issuance of the peremptory writ. The claim is that Carpenter should be required or given an opportunity to settle his accounts, and then an order issued for the amount found due in favor of Looney. It is argued that section 38, Chapter 39, Code which provides that "no money shall be paid by the sheriff out of the county treasury except upon an order signed by the president and clerk of the county court, and properly endorsed as aforesaid, or upon judgment or decree, as provided in the forty-second section of this Chapter," applies. That section prescribes the method by which moneys are paid out of the county treasury in conducting the fiscal affairs, such as paying claims, accounts, judgments and the like, and has no application to turning over the office to the person entitled thereto. By turning over the office respondent is not precluded from making settlement hereafter of his official doings. In *Snee* v. *White, supra,* the sheriff who had been appointed to fill the office until the next general election was still under proper bond when the petitioner in that case, the newly elected sheriff, made demand upon him for the keys, books, moneys, perquisites and the like pertaining to the office. No court order had been issued (as in this case) requiring the appointed sheriff to relinquish the office. He was the outgoing sheriff, and the constitution required him to "finish

all business remaining in his hands at the expiration of his term; for which purpose his commission and official bond shall remain in force.'' Here there is a vacancy, made so by operation of law upon failure to execute sufficient bond. Respondent is relieved from further responsibility, under the statute, and as above suggested a settlement is not prerequisite to his relinquishment of the office. The *Snee* case is quite different from this one.

The peremptory writ will be awarded.

*Writ awarded.*