ALVA W. ORNDORFF *v.* W. G. POTTER

(No. 9490)

Submitted April 27, 1943.   Decided June 1, 1943.

Fox, JUDGE, dissenting.

*William L. Lee,* for plaintiff in error.
*Frank Love,* for defendant in error.

RILEY, PRESIDENT:

In an election contest between Alva W. Orndorff and W. G. Potter, involving membership on the Fayette County Board of Education, the County Court of Fayette County refused to sustain the contention of Orndorff that he had been duly elected a member of said board, but, upon appeal, the Circuit Court of Fayette County adjudged that Potter was ineligible for the term for which he was a candidate and that Orndorff was elected a member of said board and entitled to hold such office. Potter prosecutes this writ of error (erroneously designated an appeal in Code, 3-9-3) to that judgment.

Code, 18-5-1, as amended by Chapter 42-5-1b, Acts of the Legislature of West Virginia, Regular Session, 1941, provided for the election of two members of the board of education for six-year terms, and one member for the four-year term at the general election in 1942. At the time of such election B. C. Peters, a resident of Fayetteville District, had been elected to board membership for a term of four years in November, 1940, and was serving as a member. According to the stipulation in the record, the results of balloting for board membership at the election held on November 3, 1942, are as follows:

### The Two Six-Year Terms

| | | |
|---|---|---|
| Gomer Carson | Falls District | 6886 |
| W. G. Potter | Fayetteville District | 5721 |
| Alva W. Orndorff | Falls District | 4261 |
| F. Rankin Clark | Kanawha District | 3966 |

### The Four-Year Term

| | | |
|---|---|---|
| W. H. Haynes | Fayetteville District | 6827 |
| Geo. T. Lancaster | Falls District | 3623 |

There is no contention that Carson was not elected. The instant contest arises over the election of the member for the second six-year term, and the involvement arises because of the statutory inhibition that "no more than two members shall be elected from the same magisterial district". Code, 18-5-1, amended by Chapter 42-5-1, Acts of the Legislature of West Virginia, Regular Session,

1941. In the notice of contest filed by Orndorff in the county court, he based his right to office on the fact that W. H. Haynes had received the highest number of votes for the four-year term, and that since both Haynes and Peters (the incumbent member) were from Fayetteville District, Potter, likewise from the same district, was ineligible to election under the statute, and, therefore, he, Orndorff, was the duly elected member for the second six-year term, having received the third highest number of votes. The stipulation referred to above states that Lancaster did not contest Haynes' election for the four-year term.

Were it not for the inhibitory provision of the statute, both Potter and Haynes would have been duly elected for the six and four-year terms, respectively, but because of Peters' incumbency as a member of the board and his residence in Fayetteville District when elected, it necessarily results that under the state both Potter and Haynes cannot be declared elected. The stipulation asserts that Haynes' election has not been contested, and, of course, the time therefor has now elapsed. Because thereof we assume his election as a member of said board, and hence Potter may not be declared elected within the meaning of the statute: otherwise the inhibitory provision of the statute under consideration would be violated. The trial court held Potter ineligible because he had received less votes than Haynes. While we have already assigned our reason for denying Potter the status of a board member, we think it pertinent to observe that Potter and Haynes were not nominees for the same office and, therefore, the reasoning assigned for denial of Potter's eligibility by the court below is not appealing. But is Orndorff entitled to board membership by reason of Potter's statutory residence disqualification?

In this State in the leading case of *Dryden* v. *Swinburne*, 20 W. Va. 89, this Court has committed itself to the doctrine that in an election, where the statute does not otherwise provide, a candidate who does not receive a majority or plurality of the votes cast cannot be de-

clared entitled to office, though the candidate receiving the majority of the votes cast be disqualified to assume office. *State ex rel. Depue* v. *Matthews,* 44 W. Va. 372, 29 S. E. 994, following the holding of this Court in the *Dryden* case, held (pt. 2 syl.), "Where two parties are opposing candidates for the office of sheriff, and the one receiving the highest number of votes for the office disqualifies himself from holding the same by contracting to farm or sell the office or a portion thereof, such fact does not confer any interest in the office on the party receiving the minority of the votes cast at the election." This rule, in the absence of statute, is one thoroughly consonant with our system of government. It has never been departed from by this Court. In fact, it was recently applied in the case of *State ex rel. Clayton* v. *Neal,* 122 W. Va. 501, 505, 11 S. E. 2d 109. Hence, despite Potter's disqualification, since Orndorff did not receive a majority or plurality of the votes cast for the office for which he was a nominee, he was not elected and is not entitled to prevail in the instant contest. To this extent the circuit court was in error.

For the foregoing reasons, the judgment of the Circuit Court of Fayette County is affirmed in so far as it adjudged Potter's right to office; and in so far as it adjudged Orndorff's right thereto, the judgment is reversed.

*Affirmed in part; reversed in part.*

Fox, JUDGE, dissenting:

On the record presented, I think it should be held that the contestant Alva W. Orndorff, was elected for the six-year term as a member of the Board of Education.

The Legislature must have intended that three members of the board should be elected at the general election held in November, 1942. Chapter 43, Acts of the Legislature, 1941, so provides. In view of the other provision of the same chapter, that "no more than two members shall be elected from the same magisterial district", which restriction applies to the full board, it should have been, and doubtless was, contemplated by

the Legislature that the situation with which we are now confronted might arise in different counties of the State at every election. We should, therefore, endeavor to find a sound basis on which the will of the electorate can be made effective. If neither Potter nor Orndorff was elected, then a vacancy exists and this result should be avoided if possible.

I think it is clear that the Legislature intended to follow the same policy which has been adopted in respect to county courts. Section 22, Article VIII, of our Constitution, provides: " * * * no two of said commissioners shall be elected from the same magisterial district", and then goes on to provide, "and each two or more persons residing in the same district shall receive the greater number of votes cast at any election then only the one of such person receiving the highest number shall be declared elected, and the person living in another district, who shall receive the next highest number of votes, shall be declared elected". In *Griffith* v. *County Court,* 80 W. Va. 410, 92 S. E. 676, where two commissioners were to be elected, and the party who received the second highest number of votes was ineligible, under the constitution, to hold the office, the party who received the third highest number of votes was declared elected. Section 23a, Article IV, Chapter 42, Acts of the Legislature, 1942, applying to the nomination of members of the board of education in a primary, provides: "In the event of death, withdrawal or disqualification of a nominee for any office appearing on the nonpartisan ballot, subsequent to the primary, and prior to the general election, the person or persons receiving the next highest respective votes in the primary election for the position in question shall be deemed nominated". For some reason, Section 4a of Article V, of the same chapter, fails to provide for the same situation in the general election. I cannot believe that it was the legislative intent to establish a different policy from that applied by it to the primary. Clearly, there was a legislative omission which makes it possible to nullify the result of an election, and I think we

can, with entire propriety, read into the statute the same principle which the Legislature applied to the primary, and which is in line with the constitutional provision with respect to county courts. I realize that this is judicial legislation, but I think it is justified in the present instance.

The case of *Dryden* v. *Swinburn,* 20 W. Va. 89, — and subsequent cases upholding the principle therein stated,— is relied on in the majority opinion. I do not question the soundness of that opinion, but I do not think it should be applied to the case at bar. Here the geographical location of the several members of the board is made a test of eligibility to hold office, as in the case of a county court. The only difference is that as to county courts, the test is constitutional, while here it is statutory. This is not important, because the power of the Legislature to create the test cannot be questioned. In the *Swinburn* case there was no such test. I think in the election of members of the county court and boards of education we are not bound by the *Swinburn* case.

I am, perhaps, influenced by what I conceive to be the dangers which may result from the application of the majority holding. I apprehend that at every election, many situations similar to the one we are now considering will arise throughout the State, and in many instances elections will prove abortive. This would be unhealthy and disappointing, and, in my opinion, create confusion and turmoil in our educational system. In the case at bar, no question is raised as to the election of Carson for the six-year term. But suppose Carson's election had been contested along with that of Potter. On what principle would we decide as between Carson and Potter? The fact that Carson received more votes than Potter would lead us to hope that we could declare him elected, but there would be no statutory justification for such holding. The right to be elected to an office does not depend on the size of the vote, if the vote is sufficient to elect. The result might be that neither was elected and, therefore, two vacancies in the board cre-

ated. In such a case the election would be of no effect whatever. Surely the Legislature never intended such a result.