State of West Virginia *ex rel.* Oza Cline, *et al.*

*v.*

Joe W. Hatfield, *et al.*

(No. 12069)

Submitted September 14, 1960. Decided September 20, 1960.

*Jenkins & Jenkins, J. E. Jenkins, Jr.,* for relators.

*Martin C. Bowles, Leonard Higgins,* for respondents.

Berry, Judge:

In this original proceeding in mandamus filed in this Court, the petitioners, seven citizens, voters and taxpayers of Mingo County, seek to compel the respondents, the duly qualified and acting ballot commissioners for Mingo County, to omit the name of respondent, Howard Chambers, as the Democratic candidate for Sheriff of Mingo County, from the ballot to be prepared for the general election to be held on November 8, 1960.

The petitioners allege that one Thurman Chambers was duly elected Sheriff of Mingo County at the general

election in November, 1956, for the term expiring December 31, 1960; Thurman Chambers duly qualified and assumed the duties of the office of Sheriff of Mingo County on January 1, 1957. The respondent, Howard Chambers, was duly appointed and qualified as a deputy sheriff of Mingo County under Thurman Chambers and served until January 28, 1957. On January 28, 1957, Thurman Chambers died and on January 29, 1957, respondent, Howard Chambers was appointed by the Mingo County Court and took office as Sheriff of Mingo County and has been and now is Sheriff of Mingo County for the term which will expire on December 31, 1960.

The respondent, Howard Chambers, filed an answer, admitting the above, but adding that his appointment by the Mingo County Court was, pursuant to law, only until the next general election in November, 1958, and that, at the general election in November, 1958, he was elected to the unexpired term of Sheriff of Mingo County, which unexpired term extended from the election in November, 1958 to December 31, 1960. Howard Chambers, the respondent, in his answer, also denies the authority of the other respondent ballot commissioners to inquire into his eligibility or to omit his name from the official ballot for the general election to be held on November 8, 1960.

On September 8, 1960, a rule was granted by this Court returnable to September 14, 1960, at which time the matter was argued before the Court and submitted for decision on arguments and briefs. An order was entered by the Court on September 19, 1960, refusing the writ prayed for in this case. This opinion is written now giving the reasons for the refusal to grant the writ.

This is the latest of three cases that this Court has had before it since the primary election in May of this year on petitions for writs of mandamus to compel the board of ballot commissioners to omit the names of or to enjoin and restrain such board of ballot commissioners in three counties of this State from placing the names of duly nominated candidates for sheriff on

the ballot to be voted on at the general election to be held November 8, 1960. The grounds or reasons for the disqualification and ineligibility of the candidates urged in each case are the same. That is, they are disqualified or ineligible to be elected sheriff in their respective counties because each has served as a deputy sheriff to the duly elected sheriff for the four year term beginning January 1, 1957 and ending December 31, 1960, under provisions of Article IX, Section 3 of the Constitution of West Virginia, which provides that a person who has acted as deputy sheriff for a sheriff duly elected to a full term is ineligible to be elected sheriff for the next succeeding full term. The writs were granted in two cases and refused in one.

In the case of *State ex rel. Zickefoose, et al. v. Garland West, et al.*, 145 W. Va. 498, decided at the Special Term in April 1960, and *State ex rel. Duke v. O'Brien,* 145 W. Va. 600, decided at the Regular September, 1960 Term, the writs were granted and the decisions were three to two. Judges Haymond and Berry dissented in both cases on the ground that the extraordinary proceeding of mandamus was not the proper remedy to be used in such cases because it compelled the board of ballot commissioners to omit the names of the duly nominated candidates for sheriff from the ballot, which they had no authority or duty to do.

The title to public office should not be adjudicated upon application for mandamus. The proper remedies, as indicated in Judge Haymond's dissenting opinion in the *Zickefoose* case are a *quo warranto* proceeding, a proceeding upon an information in the nature of a writ of *quo warranto,* or an election contest. See Code, 53-2-1 and Code, 3-9-2; *Dryden v. Swinburne,* 15 W. Va. 234; *Gorrell v. Bier,* 15 W. Va. 311; *Dryden v. Swinburne,* 20 W. Va. 89; *State ex rel. Savage v. Robertson,* 124 W. Va. 667, 23 S. E. 2d 281; *Orndorf v. Potter,* 125 W. Va. 785, 25 S. E. 2d 911; *Irons v. Fry,* 129 W. Va. 284, 40 S. E. 2d 340; *Slater v. Varney,* 136 W. Va. 406, 68 S. E. 2d 757.

The appropriate time to ascertain whether or not a candidate is ineligible to hold an office is after an election has been held electing such candidate to the office. In this case, it would be the general election and not the primary election. It may never be necessary to make such inquiry as such candidate may be defeated in the election, withdraw or die, and in many cases the ineligibility or disqualification of a candidate in an election may be cured; therefore, to disqualify a candidate in such case by mandamus before an election may inflict a grave injustice. *Pack v. Karnes*, 83 W. Va. 14, 97 S. E. 302; *State ex rel. Lockhart, Sr. et al. v. Rogers, Mayor, et al.*, 134 W. Va. 470, 61 S. E. 2d 258.

It was in the *Pack* case which was decided in 1918 that the writ of mandamus was used for the first time by this Court to compel the board of ballot commissioners to remove the name of a duly and regularly nominated candidate from the ballot because of an alleged ineligibility or disqualification. It was not so used again until the *Zickefoose* case in 1960, and the reason given for the ineligibility or disqualification in the *Pack* case was later held by this Court not to be a disqualification or to render a candidate ineligible to hold office. *State ex rel. Hall v. County Court of Gilmer County*, 87 W. Va. 437, 105 S. E. 693; *Varney v. County Court of Mingo County*, 102 W. Va. 325, 135 S. E. 179; *State ex rel. Bumgardner v. Mills*, 132 W. Va. 580, 53 S. E. 2d 416. If a *quo warranto* proceeding, a proceeding upon an information in the nature of *quo warranto*, or an election contest had been used in the *Pack* case instead of mandamus, perhaps the candidate who was nominated would not have been found to be ineligible or disqualified.

Except in the isolated instances of the *Pack* and *Zickefoose* cases, the writ of mandamus, as heretofore used in cases concerned with the right of a candidate to be on a ballot, has been issued to compel the board of ballot commissioners to place the name of a duly nominated candidate on the official ballot without inquiring into his eligibility and qualification, as such

board is without the authority or power to inquire into such matters but has only the duty to place the name on the ballot if the candidate has been duly and regularly nominated and such result properly recorded and certificate issued thereon regular on its face. The decided cases indicate that it should be used only in the latter manner in such cases. *State ex rel. McKnight v. Board of Ballot Commissioners of Wetzel County,* 86 W. Va. 496, 103 S. E. 399, *State ex rel. Harwood v. Tynes,* 137 W. Va. 52, 70 S. E. 2d 24; *State ex rel. Schenerlein v. City of Wheeeling,* 144 W. Va. 434, 108 S. E. 2d 788.

In the case of *State ex rel. Duke v. O'Brien, supra,* the petition clearly was for injunctive relief because the prayer was to enjoin, restrain or prohibit the board of ballot commissioners from placing the name of the duly nominated candidate for sheriff on the ballot. In other words, the writ of mandamus was used as an injunction to obtain equitable relief and Judges Haymond and Berry are of the opinion that it could not be so used. Not only should the writ of mandamus not be used for injunctive proceeding, but an injunctive proceeding cannot be used as a substitute for an election contest to determine the eligibility or qualification of a candidate. See *Evans v. Charles,* 133 W. Va. 463, 56 S. E. 2d 880; *Lockard v. Wiseman,* 139 W. Va. 306, 80 S. E. 2d 427.

The reasons for not using mandamus in a case of this kind are clearly set out in the two dissenting opinions filed by Judges Haymond and Berry in the *Zickefoose* case, with exhaustive authorities cited. Reference is here made to those dissenting opinions with the citations of authorities showing that the writ of mandamus should not be used in such cases. Among them were the comparatively recent cases of *State ex rel. McKnight v. Board of Ballot Commissioners of Wetzel County,* 86 W. Va. 496, 103 S. E. 399; *State ex rel. Harwood v. Tynes,* 137 W. Va. 52, 70 S. E. 2d 24; *State ex rel. Schenerlein v. City of Wheeling,* 144 W. Va. 434, 108 S. E. 2d 788, which have not been over-

ruled by this Court and still remain the law of this State.

It is true that the *Zickefoose* case apparently held the opposite to these decided cases because the question of eligibility to hold office was disposed of by a writ of mandamus before the candidate was elected. However, these cases were not specifically overruled and the reason for awarding the writ in the *Pack* case, which was used as authority for awarding the writ in the *Zickefoose* case, has been discredited. *State ex rel. Hall v. County Court of Gilmer County,* 87 W. Va. 437, 105 S. E. 693; *Varney v. County Court of Mingo County,* 102 W. Va. 325, 135 S. E. 179; *State ex rel. Bumgardner v. Mills,* 132 W. Va. 580, 53 S. E. 2d 416.

In the case at bar, although the principle involved is the same as the *Zickefoose* and *Duke* cases, the facts are not identical. The candidate for sheriff, Howard Chambers, was appointed deputy sheriff to Thurman Chambers, his father, who had been duly elected and qualified as Sheriff of Mingo County on January 1, 1957, in which capacity he served for twenty-eight days. Howard Chambers was then appointed sheriff until the next general election which was in 1958, at which time he was elected to serve the unexpired term of Thurman Chambers until December 31, 1960. In the *Zickefoose* and *Duke* cases the candidates for sheriff were both appointed deputies to the sheriffs who are still serving their terms which expire December 31, 1960.

Judges Browning and Calhoun are of the opinion that there is no material difference between the two cases as the principle involved is practically the same, that is, that the respondent, Howard Chambers, is ineligible to be elected sheriff, succeeding the full term to which his father had been elected, his father having appointed him as his deputy before he, Thurman Chambers, died.

Judge Given is of the opinion that the respondent, Howard Chambers, is not ineligible to be elected sheriff

in this case for the reason that he had been elected to serve an unexpired term, which is not a full term within the meaning of the provisions of Article IX, Section 3 of the Constitution of West Virginia and that this case is governed by the decision of this Court in the case of *Gorrell v. Bier,* 15 W. Va. 311.

Judges Haymond and Berry are again of the opinion, as indicated herein, that mandamus is not the proper remedy to be used in a case of this kind, the same position taken by them in the *Zickefoose* and *Duke* cases, for the same reasons as set out in detail in the dissenting opinions filed in the *Zickefoose* case and referred to herein.

Judge Given will file a concurring opinion, setting out his reasons for refusing to grant the writ in the case at bar.

A majority of the Court being of the opinion that the writ should not be granted for the reasons enunciated herein, the writ prayed for is denied.

*Writ denied.*

GIVEN, JUDGE, concurring:

I concur in the action of the Court in denying the issuance of the writ prayed for by petitioners only because of the firm belief that the pertinent constitutional provisions do not prohibit the respondent candidate for the office of sheriff from being "elected" to that office.

The pertinent provisions of Section 3 of Article IX of the State Constitution read: "The same person shall not be elected sheriff for two consecutive full terms; nor shall any person who acted as his deputy be elected successor to such sheriff * * *". As pointed out in the *Zickefoose* and *Duke* cases, cited in the main opinion in the instant case, all agree that a deputy sheriff is, by virtue of such constitutional provisions, prohibited from serving as successor to a sheriff for whom he has served as deputy. It is my view, however, that the can-

didate in the instant proceeding does not fall within such prohibition, and that the Court is not warranted in extending the prohibition to a class of persons not expressly included within the constitutional provisions.

It may be noticed that the Framers of the Constitution expressly provided that no person shall be "elected" sheriff for two consecutive "full" terms. Yet in the next clause of the sentence, when making provision as to the election of a deputy as a "successor", the word "full" is omitted in relation to the term of the predecessor. I can not assume this omission to have been an oversight or an accident. If the provision does not say "full" term as applied to the person succeeded, and it most certainly does not, the Court, in my opinion, has no right to broaden the meaning of the constitutional provision to "full" term.

In the instant case the candidate is serving a term for which he was duly elected and as such candidate seeks election to succeed himself, not a sheriff who served a previous term. It is true, of course, that the term for which the candidate was previously elected, and is now serving, constitutes a part of the four year period for which Thurman Chambers was elected, but that, in my opinion, does not alter or affect the conclusion that the term now being served by the candidate, though a "short" term, is a definite constitutional term. Perhaps I need cite no authorities to the effect that constitutional and statutory provisions should be construed so as not to deprive a citizen of the privilege of holding office, unless required to do so by clearly expressed language. See, however, *State ex rel. Thomas v. Wysong*, 125 W. Va. 369, 24 S. E. 2d 463; *Isaacs v. Board of Ballot Commissioners*, 122 W. Va. 703, 12 S. E. 2d 510.

I have no difficulty in reaching the conclusion that mandamus is a proper remedy in the circumstances of this case, as held in the *Zickefoose* and *Duke* cases. In my view it is not merely a proper remedy, but the only available remedy. It must be noted that the constitutional prohibition, as to the class of persons included,

denies to them the right to be "elected", a wholly different matter from the right to serve in or occupy an office, or a removal from office, yet it is argued that such persons must first be elected and then by some appropriate remedy ousted from office, before the constitutional provision can be given effect. That, in my view, would amount to a plain circumvention of the constitutional provision. Such a theory would not only require their "election", a thing clearly and expressly prohibited, but would also permit the holding of the office, at least from the date of qualification until the date of an effective final order of ouster.

In so far as I can determine, the only cogency in the position adhered to by those who argue that mandamus is not available in the circumstances of this case is the lack of a duty on the part of the ballot commissioners to act in such circumstances. I have no difficulty in finding such a duty, for there is an express command from the Constitution that a person falling within the prohibited class shall not be "elected", and it can hardly be denied that it is the duty of the ballot commissioners to respect and obey such a constitutional demand. See Code, 3-5-4, as amended, and authorities cited in the *Zickefoose* case. " ' Mandamus will not be denied on the ground that there is another remedy unless such remedy is equally beneficial, convenient and effective.' Pt. 1, Syl., *Hardin v. Foglesong,* 117 W. Va. 544." Point 1, Syllabus,*State ex rel. Miller v. The Board of Education of the County of Mason,* 126 W. Va. 248, 27 S. E. 2d 599.

In *Carter v. City of Bluefield,* 132 W. Va. 881, 897, 54 S. E. 2d 747, this Court stated: "'* * * The tendency in this jurisdiction is to enlarge and advance the scope of the remedy of mandamus, rather than to restrict and limit it, in order to afford the relief a party is entitled to when there is no other adequate and complete legal remedy. *Cross v. West Virginia Central and Pittsburgh Railway Company,* 35 W. Va. 174, 12 S. E. 1071 * * *'". It would seem that if any situation would warrant the enlargement or advancement of the scope of man-

damus, it would be in a situation where required to effectuate the true purpose and intent of a constitutional command, especially where such command is for the protection of the whole people, though I am not of the view that the broadening of the scope of mandamus is indicated or necessary in the instant proceeding. See *Hardin v. Foglesong,* 117 W. Va. 544, 186 S. E. 308; *State ex rel. Looney v. Carpenter,* 106 W. Va. 170, 145 S. E. 184; *State ex rel. Simon v. Heatherly,* 96 W. Va. 685, 123 S. E. 795; *State ex rel. Hall v. County Court of Monongalia County,* 82 W. Va. 564, 96 S. E. 966; *Eureka Pipe Line Company v. Riggs, Sheriff,* 75 W. Va. 353, 83 S. E. 1020; *Dunlevy v. County Court of Marshall County,* 47 W. Va. 513, 35 S. E. 956.

Neither am I of the view that in the *Duke* case "mandamus was used as an injunction to obtain equitable relief". In original proceedings in mandamus in this Court the writ is often moulded to conform with the exigencies necessitated by the circumstances of the particular case. In my view there is no substantial reason why a writ of mandamus should not issue, in a proper case, commanding the ballot commissioners to omit a name from the official ballot, as well as a writ commanding the ballot commissioners to place a name on the official ballot.

BROWNING, PRESIDENT, dissenting:

I respectfully dissent from the decision of this Court to deny the writ of mandamus as prayed for in the petition. It is my opinion that the facts in this case do not distinguish it from the recent proceedings of *State of West Virginia, ex rel., Moneth W. Zickefoose, et al v. Garland West, et al.,* 145 W. Va. 498, 116 S. E. 2d 398; and *State ex rel. Duke, et al. v. Perry Emmitt O'Brien, et al.,* 145 W. Va. 600, 117 S. E. 2d. 353. If further reference is made in this dissent to these cases they will be referred to as the *Zickefoose* or *Duke* case. The 5th Syllabus Point in the *Zickefoose* case is controlling: "A person who has acted as deputy for a sheriff duly elected to a full term is ineligible, under

the provisions of Article IX, Section 3 of the Constitution of West Virginia, to be elected sheriff for the next succeeding full term."

Only two of the three Judges constituting a majority in this case would deny the writ on the ground that mandamus is not a proper remedy for the relief which petitioner seeks. It is apparent from a careful reading of the majority opinion and the dissenting opinions in the *Zickefoose* case, as well as the order in the *Duke* case, that this view is based upon the conviction that, since the Board of Ballot Commissioners has not been given the specific authority by statute to remove the name of a candidate from a ballot, or to refuse to place the name of a candidate upon a ballot, this Court is without authority in mandamus to require it to do so. This problem has been with this Court since the early case of *Ballot Commissioners v. Minturn*, 4 W. Va. 300. This Court there held that mandamus would not lie to review the action of the Board of Supervisors of Mason County in determining that Minturn was not qualified to become supervisor of the county, though apparently elected to that office, since the Board of Supervisors under a statute then in effect had the power to determine the eligibility of the membership of the Board. No attempt will here be made to review the decisions of this Court between the decision in the *Minturn* case and that of *Marcum v. Ballot Commissioners*, 42 W. Va. 263, 26 S. E. 281. Suffice to say that the decisions of this Court during that period consistently held that in the absence of statute mandamus would not lie to determine the eligibility of candidates to be placed upon an election ballot. Most of those cases are cited in the Marcum opinion. It should be observed that even in the absence of statute the Virginia Court had held otherwise, as is also noted in the *Marcum* opinion. Judge Brannon wrote the opinion in the *Marcum* case, and, after reviewing the previous decisions of this Court and citing other authority, stated: "* * * I come to the conclusion that without statute aid, mandamus does not lie in this case. * * *" The issue

in that case arose out of the holding of two nominating conventions in the Eighth Judicial Circuit in which each certified to the Ballot Commissioners a different nominee for judge. The Ballot Commissioners selected one and the other came to this Court for a writ of mandamus to require the Board of Ballot Commissioners to substitute his name for that of his opponent. The Court held that neither of the conventions was authorized to speak for the Democratic party and that the writ would be refused since mandamus "will not lie unless the relator shows a clear legal right to have the thing done, which he asks for. If the right be doubtful, the writ will be refused." The importance of this decision lies in the fact that the petition was considered upon its merits and not summarily rejected because mandamus was not the proper remedy in such circumstances. The reason for the change of viewpoint, as between *Marcum* and the previous decisions, upon this subject, by Judge Brannon, and all of the other Judges of this Court who served with him at that time, is clearly stated in the opinion. Just three years before this decision, the Legislature had made a significant change in the applicable law by Chapter 25 of the Acts of 1893. Succinctly is the new rule stated in Syllabus Point 4: "Section 89, chapter 3, of the Code, as re-enacted in chapter 25, Acts 1893, in cases involving duties of ballot commissioners under said chapter, gives the writ of *mandamus* more scope than at common-law, rendering it a process to control them as to all actions ministerial or judicial." In the opinion Judge Brannon said in referring to the new legislation: "* * * it greatly enlarged that section, by providing, not only that officers under it should be compelled to perform their duties by *mandamus* from the circuit court, but gave a writ from the Supreme Court 'to compel any officer to do and perform legally any duty herein required of him.'* * *."

In *Pack v. Karnes, et al.*, 83 W. Va. 12, 97 S. E. 281, this Court refused a writ of prohibition to restrain the Board of Ballot Commissioners of Mercer County

from placing on the general election ballot the names of two persons alleged to be the nominees of the Democratic party solely upon the ground that prohibition would not lie for that purpose. Judge Poffenbarger in the opinion cited *Marcum v. Ballot Commissioners,* 42 W. Va. 263, 26 S. E. 281, and the inference is clear that relief was denied solely upon the ground that petitioner had selected the wrong remedy. Seven days later in *Pack v. Karnes, et al.,* 83 W. Va. 14, 97 S. E. 302, a proceeding in mandamus, the writ was granted directing the Board of Ballot Commissioners "to omit from the official ballot to be voted on at said general election November 5, 1918, the names respectively of said Shanklin and Holroyd."

If *stare decisis* means anything the issue which now perplexes this Court should have been resolved and laid to rest for all time on October 29, 1918, the day the second *Karnes* case was decided, but unfortunately it was not. Two years later this Court decided the case of *McKnight v. Ballot Commissioners,* 86 W. Va. 496, 103 S. E. 399, but strangely enough neither the Amendment to the statute of 1893, the *Marcum* case, nor either of the *Karnes* cases was mentioned in the opinion. It is apparent from the facts recited in the *McKnight* opinion that the petitioner was eligible to be elected and to hold the office which he sought in Magnolia District of Wetzel County. Thus, upon the merits, the writ should have been awarded against the Board of Ballot Commissioners, but, disregarding and not citing the decisions of this Court subsequent to the statutory Amendment of 1893, the only syllabus point would indicate that the writ was awarded solely for the reason that: "* * * the Board of Ballot Commissioners have no authority to institute an inquiry for the purpose of determining the question of his legal qualifications to hold such office." I am completely in accord with that statement and, as far as I know, in none of the three recent proceedings in which this question has arisen no Judge of this Court has contended to the contrary. Perhaps some significance may be attached to the fact that

in the *McKnight* case, and in some subsequent decisions citing it, the Board has set itself up as a judicial tribunal to inquire into the eligibility of the prospective candidate. This Court in such cases disregarded the finding of the Board and granted the writ to the petitioner who was the prospective candidate. Now, in the second *Karnes* case the relator was a third party who instituted the proceeding in mandamus as a "citizen, tax payer and voter." The 1st Syllabus Point of that case specifically holds that such a person may maintain mandamus to compel a Board of Ballot Commissioners to discharge its duty lawfully in respect to the preparation of ballots for a general election. Thirty-two years after the *McKnight* case this Court decided the case of *State of West Virginia ex rel. Jane E. Harwood v. Tynes, et al.*, 137 W. Va. 52, 70 S. E. 2d. 24. This was an original proceeding in mandamus in this Court by the petitioner seeking a writ to compel the Board of Ballot Commissioners of Cabell County to place her name on the official ballot as a candidate for the office of democratic committeewoman from the 7th Ward of the City of Huntington. Her certificate was in the proper order, her filing fee had been paid, but the Board, questioning her allegiance to the Democratic party, refused to place her name on the ballot, and in its answer the respondents defended their action upon the ground that petitioner was not "openly known" to be a bona fide member of the democratic party, as required by the provisions of Code, 3-4-6, as amended. The evidence in the form of affidavits was in conflict upon this point. It seemed clear that the petitioner had been registered as a Republican from 1943 to 1952, but she had changed her registration and affiliated herself with the Democratic party. Upon the merits of this case this Court very properly granted the writ. Jane Harwood may have been guilty of joining the church on Saturday night and wanting to sing in the choir the next day, but that was not sufficient reason for refusing her a place on the ballot for the position she sought. However, the 1st Syllabus Point of the *Harwood* case is a quotation of the single syllabus point in

the *McKnight* case. The legislative Amendment of 1893, the *Karnes* cases and the *Marcum* case were ignored. I reiterate that I have no quarrel with the proposition that a Board of Ballot Commissioners is not empowered to judicially determine the eligibility of a candidate for any office as distinguished from the right of a court to judicially determine that issue and control the action of such a Board in mandamus.

This question next arose in *Adams v. Londeree,* 139 W. Va. 748, 83 S. E. 2d. 127, and in that case, for the first time since *Pack v. Karnes,* 83 W. Va. 14, 97 S. E. 302, the petitioners were third parties, citizens and voters who sought by mandamus to compel the Ballot Commissioners of the City of South Charleston "to strike the name" of the Democratic candidate for the office of Mayor of that city from the ballot for the general election which was shortly thereafter to be held. The charter of that city provided that no person was eligibile to the office of Mayor unless "at the time of his election" he was legally entitled to vote in the town election for a member of the common council. It was contended that Londeree was not an eligible voter, inasmuch as he lived within the area of the United States Naval Reservation. It should be observed that Londeree's name had been placed upon the ballot at the time this proceeding in mandamus was instituted in this Court. The question of whether Londeree was qualified to vote because of his residence in the Naval Reservation, which was within the geographical boundaries of the City of South Charleston, caused this Court great concern. The Court's opinion consisted of twenty-four pages and Judge Haymond wrote an able dissent of twenty-three pages. The Ballot Commissioners contended that mandamus would not lie and cited *State of West Virginia ex rel. Jane E. Harwood v. Tynes, et al.,* 137 W. Va. 52, 70 S. E. 2d. 24; and *State ex rel. McKnight v. Ballot Commissioners,* 86 W. Va. 496, 103 S. E. 399. This Court almost summarily dismissed the holdings of those cases stating in the opinion that lack of jurisdiction of the

Board of Ballot Commissioners to make an independent investigation to determine the qualifications or eligibility of a candidate for public office could "not be determinative of jurisdiction of a court having original jurisdiction in mandamus. Defendant members of the board of ballot commissioners hold office by virtue of the election laws, and Code, 3-5-41, provides that 'Any officer or person, upon whom any duty is devolved by in this chapter [on Elections] may be compelled to perform the same by writ of mandamus.' " This sentence constitutes one paragraph of that opinion: "We conclude, therefore, that the action of mandamus, in the circumstances of this case, was available to relators, and it was not prematurely instituted." The dissenting opinion was directed solely to the merits of the case and not the remedy. It appeared that the Court had returned to the principles laid down in *Pack v. Karnes,* 83 W. Va. 14, 97 S. E. 302, if in the intervening cases it had by decision or dicta departed therefrom. However, in *State of West Virginia ex rel. Schenerlein v. City of Wheeling,* 144 W. Va. 434, 108 S. E. 2d. 788, decided on May 12, 1959, this Court in a three to two decision reversed the judgment of the Circuit Court of Ohio County wherein a writ of mandamus was refused against the City Clerk of the City of Wheeling, who is the official that acts in the capacity of Ballot Commissioner for municipal elections. The petitioner was a candidate for City Council in one of the wards of that city and the clerk had refused to place his name on the ballot on the ground that he was not a resident of the City of Wheeling. In the opinion the Court said: "* * * The matter of his eligibility or qualifications, if it was desired to question same, should have been left for disposition until a later date. This matter has been passed on by this Court in prior decided cases. * * *", citing *State ex rel. McKnight v. Board of Ballot Commissioners,* 86 W. Va. 496, 103 S. E. 399; and *State ex rel. Harwood v. Board of Ballot Commissioners,* 137 W. Va. 52, 70 S. E. 2d. 24. The *Londeree* case was distinguished, but there was no reference to the older cases

heretofore cited. Again, if any significance can be attached to it, the petitioner was the prospective candidate and the defendant was the Ballot Commissioner. The petitioner, or petitioners, in the *Zickafoose* and *Duke* cases, as in this case, are third parties, voters and citizens seeking to remove from the ballot an alleged ineligible candidate for sheriff by proceedings in mandamus. Mandamus is not a writ of right. The granting or refusal of a writ of mandamus is discretionary with the Court and governed by equitable principles. It issues only to prevent instead of to promote injustice. *Drainage Dist. No. 4 v. Murphy,* 119 F. 2d. 390; C.J.S., Mandamus, §2, 9. It is not too speculative to presume that the Court, in deciding those cases in which the prospective candidate was the petitioner, and in which the writs were awarded, gave some consideration to the fact that the Boards of Ballot Commissioners had illegally constituted themselves as courts of inquiry to investigate and pass upon the elegibility of the respective candidates, and refused to condone such procedure by denying the writ sought. Furthermore, the evidence as to eligibility was at best conflicting or clearly preponderated in favor of the candidate. The 2nd Syllabus Point of *State ex rel. Morrison et al. v. Freeland,* 139 W. Va. 327, 81 S. E. 2d. 685, reads: "Where a statute requires that a person to be elected to office shall have a specific qualification at the time of his election, the requirement is not satisfied by the removal of the disqualification after election." The disqualification of the respondent in this proceeding comes from a higher source of authority than a statute. It is contained in the organic law of this State and has been there unchanged since the formation of the State in 1863.

There has been too much "distinguishing" of previous decisions of this Court in the opinions of the recent series of cases in which this issue has arisen. In the words of Samuel Butler, they "could distinguish and divide - a hair 'twixt south and southwest side." I would overrule or disapprove the lan-

guage used inconsistent therewith in every decision of this Court subsequent to *Pack v. Karnes,* 83 W. Va. 14, 97 S. E. 302, that is not in accord with the clear rule laid down in that case upon the question of whether mandamus is a proper remedy by which this Court may direct a Board of Ballot Commissioners to remove, or not place upon a ballot, the name of a candidate for office where his ineligibility to be *elected* thereto is clearly shown by the statute or organic law of this State, without regard to the propriety of the Board's conduct in the matter.

Finally, an election contest, a quo warranto proceeding, or a proceeding upon an information in the nature of quo warranto, are not adequate remedies to restrain sheriffs and deputy sheriffs from violating the provisions of Article IX, Section 3, of the Constitution. Only defeated candidates may contest an election, and they can not thereby make themselves eligible for the office they seek. It is not likely that such a defeated candidate would bear the expense incident to a contest without hope of reward. A proceeding in quo warranto to test the eligibility of a person apparently elected sheriff of a county may be prosecuted only by the Attorney General of this State, or the Prosecuting Attorney of the county affected in their discretion. If for a good or unworthy reason such an official chose not to proceed in this manner he could not be forced to do so. A proceeding upon an information in the nature of quo warranto may be prosecuted only by ''an interested person.'' A casual examination of the Court's opinion, and the dissenting opinion, in *State ex rel Morrision, et al. v. Freeland,* 139 W. Va. 327, 81 S. E. 2d. 685, is sufficient to indicate how remote the chance would be for any person to meet the requirements of an ''interested person'' in a proceeding to oust an illegally elected sheriff.

I would grant the writ of mandamus as prayed for in the petition. I am authorized to say that Judge Calhoun concurs in the views expressed in this dissent.